Docket No. 84268–Agenda 30–September 1998.

THE CITY OF CHICAGO, Appellee, v. EDWIN ROMAN, 

 Appellant.

Opinion filed December 17, 1998.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Edwin Roman, was convicted of the Chicago municipal offense of assault against the elderly. Chicago Municipal Code §8–4–080 (1990). The circuit court imposed a sentence that was less than the mandatory minimum sentence prescribed by the ordinance. The City appealed. The appellate court re­versed and remanded for resentencing consistent with the ordi­nance. 292 Ill. App. 3d 546. We allowed defendant's peti­tion for leave to appeal (155 Ill. 2d R. 315) and now affirm the appellate court.

BACKGROUND

The City's evidence at trial was essentially as follows. On August 23, 1994, Anthony Pupius (also spelled “Puprus” in the record) was 60 years old. On that day, he and a visitor, Violeta Valaityte, saw a rental truck enter an alley (also referred to as an “unpaved street” in the record) near his home in Chicago. They came out from his house, and saw defendant and Ricardo Diaz removing packing material, 
i.e.
, cardboard cartons and styro­foam, and dumping it in the alley.

Pupius approached defendant and told him to stop dumping garbage. Using abusive language, defendant told Pupius that what they were doing was none of his business, and that he should leave.

Pupius returned to his house and telephoned “911.” He went back to the alley with a camera and took pictures of defendant. When defendant saw Pupius photographing him, he, according to Pupius, “became very violent.” Defendant, while swearing at Pupius, picked up a stick or tree branch approximately four feet long and two fingers wide and tried to hit Pupius, who was standing four or five feet away from defendant.

Pupius, fearful that defendant would hit him with the stick, backed away from defendant and retreated into his house. He again telephoned “911.” During this time, defendant returned some of the packing material to the truck. Pupius again came outside with his camera, hoping to take more pictures. By then, defendant had backed the truck around to the front of Pupius' house. The truck stopped as Pupius approached. Defendant and Diaz exited the truck. Defendant approached Pupius, who was backing off; Diaz stood by the truck. Defendant swore at and threatened Pupius, saying that defendant knew what Pupius looked like and where he lived.

Eventually, defendant and Diaz reentered the truck and drove approximately one block down the street, where they stopped and rear­ranged their cargo. Chicago police arrived, spoke with Pupius, and then stopped defendant and Diaz.

Defendant and Diaz were arrested and charged with dumping garbage in violation of section 221b of the Criminal Jurisprudence Act (740 ILCS 55/221b (West 1992)). Defendant was also charged with assault against the elderly, 
i.e.
, Pupius, in violation of section 8–4–080 of the Municipal Code of Chicago. Chicago Municipal Code §8–4–080 (1990).

The defense case was essentially as follows. Defendant and Diaz were delivering home furnishings for Harlem Furniture. They made a delivery on Pupius' street. Defendant admitted placing the packing material in the alley. However, he intended to cut it down in size, return it to the truck, and rearrange it with the remaining furniture. Harlem Furniture was paid for returning and recycling the packaging.

After defendant had put the packing material in the alley, and as he was getting his utility knife, Pupius came out of his house with a camera and accused defendant of dumping garbage. Defendant approached Pupius to explain his actions, but Pupius warned defendant that if he touched Pupius, defendant would be arrested.

Defendant told Diaz that Pupius was acting crazy, and that they should quickly reload the truck with the packing material. They would do their cutting in front of the customer's house. As they began driving, Pupius jumped in front of the truck. Defendant admitted that he exited the truck and exchanged words with Pupius. However, defendant denied ever threatening Pupius either verbally or with a stick.

At the close of the evidence, the circuit court found defendant and Diaz not guilty of garbage dumping, but found defendant guilty of assault against the elderly.

The circuit court subsequently denied defendant's motion to recon­sid­er the finding of guilty on the assault charge. Also, the court denied defendant's motion to declare Chicago Munici­pal Code section 8–4–080 uncon­stitution­al in its entirety. However, the court ruled that the mandatory minimum sentence that the ordinance prescribes–imprisonment for 90 days–exceeds the City's home rule author­i­ty. At the close of the sentencing hearing, the circuit court sen­tenced defendant to 10 days of community service and to one year of probation.

The City appealed. After finding jurisdiction, the appel­late court re­versed the judg­ment of the circuit court and remand­ed the cause for resentencing. The appellate court initially determined that it had jurisdiction to hear the City's appeal. 292 Ill. App. 3d at 550. Addressing the merits, the appellate court concluded that (1) it was within the City's constitutional powers as a home rule unit to have a sentencing scheme different from that of the state, and (2) state law does not prevent or restrict the City from prescribing mandatory imprisonment as a penalty in the ordinance. 292 Ill. App. 3d at 550-53.

Defendant appeals to this court. We note that we allowed the Illinois Municipal League leave to file an 
amicus curiae
 brief in support of the City (155 Ill. 2d R. 345).

DISCUSSION

I. Preliminary Matters

Prior to reaching the merits, we must first determine whether: (A) the appel­late court had jurisdiction to hear the City's appeal from defendant's sentence, and (B) the appeal placed defendant in double jeopardy.

A. 
The City's Appeal

Defendant first contends that the appellate court lacked jurisdiction to hear the City's appeal from his sentence. He argues that a municipality lacks the authority to appeal from a sentence imposed on a criminal ordinance violation.

Defendant invokes Supreme Court Rule 604(a)(1) as a bar to the City's appeal. That rule provides in pertinent part:

“(a) Appeals by the State.

(1) 
When State May Appeal
. In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge ***; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence.” 145 Ill. 2d R. 604(a)(1).

See 
People v. DeJesus
, 127 Ill. 2d 486, 494-96 (1989). This rule does not allow the State to contest the propriety of a sentence imposed on a criminal defendant. 
People v. Hatfield
, 257 Ill. App. 3d 707, 711 (1994); 
People v. Davilla
, 236 Ill. App. 3d 367, 389 (1992).

This case, however, involves a void judgment. A void judgment is one entered by a court that lacks, 
inter alia
, the inherent power to make or enter the particular order involved. A void judgment may be attacked at any time, either directly or collaterally. 
People v. Wade
, 116 Ill. 2d 1, 5 (1987).

In Illinois, a trial court, upon determination of guilt, must impose the criminal penalties that the legislature mandated, and has no authority to impose punishment other than that provided by statute. The court exceeds its authority if it orders a lesser sentence than what the statute mandates. 
Wade
, 116 Ill. 2d at 6.

In the present case, section 8–4–080 mandates a minimum term of imprisonment of 90 days. The circuit court sentenced defendant to 10 days of community service and to one year of probation. Thus, defendant's sentence was illegal and void. Consequently, “the appellate court had the authority to correct it at any time [citation], and the actions of the appellate court were not barred by our rules which limit the State's right to appeal.” 
People v. Arna
, 168 Ill. 2d 107, 113 (1995).

B. 
Double Jeopardy

Incidental to the question of whether the City can appeal defendant's sentence is the question of whether the constitutional prohibition of double jeopardy (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §10) bars a new sentencing hearing for defendant. Defendant and the City agree that double jeopardy principles apply to municipal ordinance prosecutions where imprisonment is the penalty. See 
Breed v. Jones
, 421 U.S. 519, 44 L. Ed. 2d 346, 95 S. Ct. 1779 (1975); 
Waller v. Florida
, 397 U.S. 387, 25 L. Ed. 2d 435, 90 S. Ct. 1184 (1970).

We conclude that this appeal does not present a double jeopardy problem. We have previously concluded that defendant's sentence was illegal and void.

It is settled that “[t]here is no double jeopardy prohibition against resentencing a defendant to correct an illegal sentence. [Citations.] Double jeopardy rights are not implicated even if the correction of the illegal sentence increases the punishment.” 
People v. Woolsey
, 278 Ill. App. 3d 708, 710 (1996); accord 
United States v. DiFrancesco
, 449 U.S. 117, 132-38, 66 L. Ed. 2d 328, 342-46, 101 S. Ct. 426, 434-38 (1980); 
Bozza v. United States
, 330 U.S. 160, 166-67, 91 L. Ed. 818, 821-22, 67 S. Ct. 645, 648-49 (1947).

Defendant attempts to avoid these principles and their necessary result. He argues that these principles apply only to statutes and not to municipal ordinances. We cannot accept this argument. A municipal ordinance has the force of law over the community in which it is adopted and, within the corporate limits, operates as effectively as a law passed by the legislature. 
Hope v. City of Alton
, 214 Ill. 102, 105 (1905); accord 5 McQuillen on Municipal Corporations §15.14, at 92 (3d rev. ed. 1996). We agree with the appellate court that the City could appeal from defendant's sentence, which appeal could not place defendant in double jeopardy.

II. Section 8–4–080

Turning to the merits, defendant contends that the penalty prescribed in section 8–4–080 exceeds the authority granted the City as a home rule unit. Section 8–4–080 provides as fol­lows:

“(1) Definitions. The following definitions are appli­

cable strictly in the context of this ordinance:

(A) `Elderly' refers to any person 60 years of age or older.

* * *

(D) `Battery' means as defined in [720 ILCS 5/12–3 (West 1992)].

(2) There is hereby created the offense of assault against the elderly, developmentally disabled, or handi­

capped. A person commits assault against the elderly *** when he engages in conduct which places a person as defined above in reasonable apprehension of receiving a battery. Upon conviction of this offense, a mandatory sentence of imprisonment shall be imposed, not to be less than 90 days nor more than 180 days.” Chicago Municipal Code §8–4–080 (1990).

Defendant asserts that it is beyond the power of a home rule unit to enact an ordinance imposing mandato­ry minimum imprison­

ment.

A. 
Power

The City is a home rule unit of local government under the 1970 Illinois Constitution. The “ `concept of home rule adopted under the provi­sions of the 1970 constitution was designed to drasti­cally alter the rela­tionship which previously existed between the local and State govern­ment.' ” 
City of Evanston v. Create, Inc.
, 85 Ill. 2d 101, 107 (1981), quoting 
Kanellos v. County of Cook
, 53 Ill. 2d 161, 166 (1972); accord 
Triple A Servic­es, Inc. v. Rice
, 131 Ill. 2d 217, 230 (1989). Article VII, section 6(a), of the Illinois Constitu­tion provides in pertinent part:

“Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.” Ill. Const. 1970, art. VII, §6(a).

As a result of section 6(a), Chicago draws its power to regulate for the protection of public safety directly from the constitution. This power does not depend on any grant of authority by the General Assembly, as was the case prior to 1970. 
Triple A Services
, 131 Ill. 2d at 230. Section 6(a) gives home rule units the broadest powers possible. 
Scadron v. City of Des Plaines
, 153 Ill. 2d 164, 174 (1992).

Section 6(i) provides:

“Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive.” Ill. Const. 1970, art. VII, §6(i).

Also, section 6(m) provides that “[p]owers and functions of home rule units shall be construed liberally.” Ill. Const. 1970, art. VII, §6(m). As a result of these constitutional provisions, “[h]ome rule units thus have the same powers as the sovereign, except where such powers are limited by the General Assembly.” 
Triple A Services
, 131 Ill. 2d at 230.

Defendant agrees with the City “that it has the power to define the offense” of assault against the elderly. However, defendant contends that the City's home rule power is limited to defining that offense and does not extend to prescribing a mandatory minimum punishment.

This contention lacks merit. Inherent in defining a crime is prescribing a penalty. A crime consists of two parts: prohib­ited conduct and a penalty for an infraction. In other words, a prescribed penalty is as necessary to constitute a crime as its defini­tion. A statute that prohibits conduct without a penalty is a nullity. 
People v. Graf
, 93 Ill. App. 2d 43, 48, 50 (1968); accord 1 W. LaFave, Substantive Criminal Law §1.2(d), at 12-13 (1986); 1 W. Burdick, The Law of Crime §70, at 69-70 (1946).

Article VII, section 6(d)(2), of the Illinois Constitution specifically provides that “[a] home rule unit does not have the power *** (2) to define and provide for the punishment of a felony.” Ill. Const. 1970, art. VII, §6(d)(2). The Committee on Local Government of the 1970 Illinois Constitutional Convention explained that this provision “specifically withholds from home-

rule units the power to define and punish felonies, but leaves them free to impose fines and jail sentences for less serious offenses.” 7 Record of Proceedings, Sixth Illinois Constitution­al Convention 1602 (hereinafter cited as Proceedings).

Additionally, article VII, section 6(e), specifically provides that “[a] home rule unit shall have only the power that the General Assembly may provide by law (1) to punish by imprisonment for more than six months.” Ill. Const. 1970, art. VII, §6(e). “It would seem that implicit in the Constitutional limitation, taken together with the grant of power in the last sentence of Subsection 6(a), is the power of home rule units, without statu­to­ry authority, to punish by imprisonment for less than six months.” Ill. Ann. Stat., 1970 Const., art. VII, §6(e), Consti­tutional Commentary, at 515 (Smith-Hurd 1993).

Implicit in the power of a home rule unit to establish a term of incarceration for less than six months is the power to establish a mandatory minimum term. Unques­tion­ably, the nature, character, and extent of the penalties for a particular criminal offense are matters for the legislature, which may describe definite terms of imprisonment or fix the minimum and maximum limits thereof (
People v. Smith
, 14 Ill. 2d 95, 97 (1958)), notwithstanding a court's finding that a penalty is unwise or absurd. 
People v. Landers
, 329 Ill. 453, 457 (1927). Based on these principles, this court has regularly upheld various statutes that prescribe mandatory minimum sentences. See 
People ex rel. Daley v. Strayhorn
, 119 Ill. 2d 331, 336 (1988); 
People ex rel. Carey v. Bentivenga
, 83 Ill. 2d 537, 542-44 (1981). Since the legis­la­ture is so empowered, then a home rule municipality has the same power.

We note that this case does not involve local regulation of a state institution. See, 
e.g.
, 
Ampersand, Inc. v. Finley
, 61 Ill. 2d 537 (1975) (court system). Also, the possibility that different home rule units may adopt similar ordinances with differing mandatory minimum sentences should be of no concern. “The grant of home rule powers contemplates that different communities which perceive a problem differently may adopt different measures to address the problem, provided that the legislature has taken no affirmative steps to circumscribe the measures that may be taken and that the measures taken are reasonable.” 
Kalodimos v. Village of Morton Grove
, 103 Ill. 2d 483, 504-05 (1984).

B. 
Total Exclusion or Preemption

Now that we have determined that the City has the power to prescribe the 90-day mandatory minimum sentence in section 8–4–080, we must next determine whether the legislature has specifically limited the concurrent exercise of this power or specifi­cally declared that the state's exercise of this power is exclu­sive. See Ill. Const. 1970, art. VII, §§6(h), (i).

Defendant points to, 
inter alia
, the Criminal Code of 1961 (720 ILCS 5/1–1 
et seq
. (West 1992)) and the Unified Code of Correc­tions (730 ILCS 5/1–1–1 
et seq
. (West 1992)). Defendant notes that section 5–1–15 of the Code of Corrections defines an “of­fense” as conduct for which a penalty is provided by any State law or, 
inter alia
, “by any law, local law or ordinance of a political subdivision of this State.” 730 ILCS 5/5–1–15 (West 1992). Defendant cites several provisions of the Code of Corrections that regulate the character, nature, and extent of punishment under the Code. One such provision is section 5–5–3, which lists authorized dispositions for “[e]very person convicted of an offense.” 730 ILCS 5/5–5–3(a) (West 1992). The list of sentencing options include probation, conditional discharge, fine, an order to clean up and repair damage, and restitution to the victim. 730 ILCS 5/5–5–3(b) (West 1992). Accord­ing to defendant, state legis­la­tion specif­i­cally defines the offense of assault against the elderly in the form of aggra­vated assault and defines the offense as a Class A misde­meanor (720 ILCS 5/12–2(a)(12), (b) (West 1992)), which is punish­able by imprisonment for up to 364 days (730 ILCS 5/5–8–3(a)(1) (West 1992)) and also by a sentence of probation or conditional dis­

charge (730 ILCS 5/5–6–1 (West 1992)). Describing these statutes as “comprehensive,” defendant contends that state criminal law evinces the legislative intent to preempt the City's home rule power to establish a mandatory minimum sentence for an ordinance viola­tion.

We cannot accept defendant's contention. Section 6(h) of the Illinois Constitution states: “The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit ***.” Ill. Const. 1970, art. VII, §6(h). Section 6(i), previously quoted, provides that home rule units may exercise any power of the sovereign concurrently with the state “to the extent that the General Assembly by law does not specifically limit the concur­rent exercise or specifically declare the State's exercise to be exclusive.” Ill. Const. 1970, art. VII, §6(i).

In 
Scadron
, this court observed:

“The purpose of section 6(i) `is to eliminate or at least reduce to a bare minimum the circumstances under which local home rule powers are preempted by judicial interpretation of unexpressed legislative intention.' [Citation.]

*** If the legislature intends to exclude local action, it must do so in a specific manner. `If it does not, then section 6(i) makes clear that the home rule units may exercise any nonexclusive power concurrently with the state,' provided such power has not been specifically limited.” 
Scadron
, 153 Ill. 2d at 186, quoting D. Baum, 
A Tentative Survey of Illinois Home Rule (Part II): Legislative Control, Transition Problems, and Intergovernmental Conflict
, 1972 U. Ill. L.F. 559, 571, 568.

The court in 
Scadron
 held:

“Under section 6(i), the General Assembly can restrict the concurrent exercise of a home rule unit's power by enacting a law which specifically limits such power. But, unless a State law 
specifically
 states that a home rule unit's power is limited, then the authority of a home rule unit to act concurrently with the State cannot be considered restricted. This interpretation supports the home rule provisions of our constitution `which favor concurrent exercise of power by the state and by home rule units and attempt to avoid implied “preemption” by judicial decisions. The Illinois approach places almost exclusive reliance on the legislature rather than the courts to keep home rule units in line.' [Citation.]” (Emphasis in original.) 
Scadron
, 153 Ill. 2d at 187-88.

Further, “comprehensive” legislation is insufficient to declare the state's exercise of power to be exclusive. To “meet the requirements of section 6(h), legislation must contain express language that the area covered by the legislation is to be exclusively controlled by the State. [Citations.] It is not enough that the State comprehensively regulates an area which otherwise would fall into home rule power.” 
Village of Bolingbrook v. Citizens Utilities Co.
, 158 Ill. 2d 133, 138 (1994). After 
Citizens Utilities
, “comprehensive scheme” preemption is “no longer the law of this state.” 
Board of Trustees of the Barrington Police Pension Fund v. Village of Barrington Ethics Board
, 287 Ill. App. 3d 614, 619 (1997). “The General Assembly cannot express an intent to exercise exclusive control over a subject through coincidental comprehensive regulation.” 
American Health Care Providers, Inc. v. County of Cook
, 265 Ill. App. 3d 919, 928 (1994).

When the General Assembly intends to preempt or exclude home rule units from exercising power over a matter, that body knows how to do so. In many statutes that touch on countless areas of our lives, the legislature has expressly stated that, pursuant to section 6(h), 6(i), or both, of article VII of the Illinois Constitution, a statute is declared to be an exclusive exercise of power by the state and that such power shall not be exercised by home rule units. 
E.g.
, 20 ILCS 3960/17 (West 1992) (Illinois Health Facilities Planning Act); 215 ILCS 5/2.1 (West 1992) (Illinois Insurance Code); 220 ILCS 10/21 (West 1992) (Citizens Utility Board Act); 225 ILCS 60/6 (West 1992) (Medical Practice Act of 1987); 235 ILCS 5/6–18 (West 1992) (Liquor Control Act of 1934); 325 ILCS 55/7 (West 1992) (Missing Children Registration Law); 410 ILCS 5/2 (West 1992) (Burial of Dead Bodies Act); 410 ILCS 80/11 (West 1992) (Illinois Clean Indoor Air Act); 520 ILCS 5/2.1 (West 1992) (Wildlife Code); 625 ILCS 5/11–208.2 (West 1992) (Illinois Vehicle Code); 625 ILCS 5/13A–114 (West 1992) (Vehicle Emissions Inspection Law).

Applying these principles to the present case, neither the Criminal Code nor the Unified Code of Corrections specifically excludes home rule units from estab­lishing crimi­nal penalties. Further, the comprehensive­ness of these codes is irrelevant to this conclusion. Certainly, the Code of Corrections is, and was intended to be, comprehensive. Section 5–1–15 promotes this comprehensiveness by including municipal ordinance violations within the scope of the Code. However, as this court held in 
Citizens Utilities
, and as the legislature has repeatedly shown, even a high degree of comprehensiveness does not equal an express statement that home rule units are excluded from exercising power. Such a statement is lacking in the Code of Corrections. Therefore, home rule units may act concurrently with the state.

Some might believe that the courts play an important role in invalidating home rule ordinances that are inconsistent with statutes or that invade a field fully occupied by state legislation. By applying judicial doctrines relating to conflict, inconsistency, and occupation of the field, the courts can, 
inter alia
, promote uniformity of law. However, for several reasons, the 1970 Constitutional Convention was strongly opposed to “judicial `preemption' ” and sought a means to reduce its importance. 1972 U. Ill. L.F. at 572.

Of course, home rule as provided in the Illinois Constitution will not remove all disagreements between state government and home rule units. As Professor Baum explained:

“Some difficult, perhaps insoluble, problems remain. It may happen that a state statute and a home rule ordinance are in direct and immediate conflict and cannot reasonably stand together. ***

*** Since the state always can vindicate its interests by legislating in the proper form, it seems unwise to sustain state legislation at the expense of home rule ordinances except when a state statute is in the required form or in those few cases where vital state interests would be sacrificed by permitting the local legislation to prevail until the next session of the General Assembly.” 1972 U. Ill. L.F. at 572-73.

We hold that the Unified Code of Corrections does not preempt section 8–4–080 of the Chicago Municipal Code.

C. 
Partial Exclusion or Conformity

If the Code of Corrections does not totally exclude or preempt the City's home rule power to establish a mandatory minimum sentence for an ordinance violation, then does the Code at least limit or partially exclude such power to the extent that it is inconsistent with the Code? It does not.

The General Assembly can not only specifically declare the state's exercise of power to be exclusive, but it can also specifically limit by law the home rule unit's concurrent exercise of power. Ill. Const. 1970, art. VII, §6(i). The Committee on Local Government explained that the legislature can “permit concurrent local legislation, but only within limits that are consistent with the state statutory scheme. Surely if the state is permitted to exclude local governments from areas where the state has acted, it also should be able to restrict the nature and extent of concurrent local activity.” 7 Proceedings at 1644; accord 1972 U. Ill. L.F. at 574.

Again, however, the General Assembly must specifically so limit a home rule unit's concurrent exercise of power. Accord 
Citizens Utilities
, 158 Ill. 2d at 138. Again, the General Assembly knows how to accomplish this, and has done so countless times, expressly stating that, pursuant to article VII, section 6(i), of the Illinois Constitution, a statute constitutes a limitation on the power of home rule units to enact ordinances that are contrary to or inconsistent with the statute. 
E.g.
, 605 ILCS 5/5–919 (West 1992) (Illinois Highway Code); 510 ILCS 45/8 (West 1992) (Carrier and Racing Pigeon Act of 1984).

Again, in the present case, the Corrections Code, although quite comprehensive, does not expressly limit the concurrent exercise of the City's home rule power or require such exercise to conform to or be consistent with the Code. We repeat that “ `[t]he Illinois approach [to home rule] places almost exclusive reliance on the legislature rather than the courts to keep home rule units in line.' 1972 U. Ill. L.F. at 579.” 
Scadron
, 153 Ill. 2d at 188. We hold that the Unified Code of Correc­tions does not par­tial­ly preempt Chicago Municipal Code section 8–4–080 or require that the ordinance conform to the Code.

CONCLUSION

Since the City had the home rule authority to establish a 90-

day mandatory minimum sentence, and since the General Assembly has not specifically preempted or limited that authority, then the pre­scribed penalty in section 8–4–080 constitutes a valid exer­cise of the City's home rule power. Thus, the circuit court was without authority to impose a sentence below what the ordinance pre­scribes.

For the foregoing reasons, the judgment of the appellate court is affirmed.

Affirmed
.