SIXTH DIVISION

March 31, 2004

No. 1-02-2697

THE CITY OF CHICAGO, a Municipal Corporation, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. ) Nos. 00 M1 404597,

)        00 M1 404598,

GUY ALESSIA, )        00 M1 404600

)

Defendant-Appellee )

)

(AARON MOORE, GMAC MORTGAGE )

CORPORATION, KAREN YOUNGBLOOD, CONNIE )

JONES, and CONTIMORTGAGE CORPORATION, ) The Honorable

) Sebastian T. Patti,

Defendants). ) Judge Presiding.

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiff City of Chicago, a municipal corporation (plaintiff), brought suit against defendant Guy Alessia (defendant)
(footnote: 1) alleging that defendant completed construction work exceeding that allowed by permit on three separate properties in violation of an ordinance found in the Chicago Municipal Code (Code).  See Chicago Municipal Code §13-12-050 (1999).  The trial court held that defendant had violated the Code and entered judgment against him on all three properties in the amount of $20,000 in fines and penalties.  Plaintiff filed a motion to reconsider this amount pursuant to the mandates of the ordinance.  The trial court denied plaintiff's motion, but modified its judgment to increase the fines against defendant to $21,000.  Plaintiff now appeals both the trial court's original holding and its denial of the motion to reconsider, contending that the fine imposed is void because it is outside the amount designated by the ordinance.  Plaintiff asks that we vacate the orders and remand this cause with instructions to the trial court to impose fines within the limits set by the ordinance.  For the following reasons, we vacate and remand with such instructions.

BACKGROUND

On September 29, 2000, plaintiff filed three complaints against defendant with respect to three properties located in Chicago: 1529 South Kenneth Avenue (Kenneth property), 3115 West Fillmore Street (Fillmore property), and 7537 South Emerald Street (Emerald property).  The complaints asserted that defendant violated sections of the Code by exceeding construction specifications contained in permits for which he had applied.  The complaint with respect to the Kenneth property alleged that defendant had applied for a permit to repair the roof, but that he exceeded this permit by performing work to enlarge a dormer attached to the property.  This excess work was completed on August 31, 1997.  Plaintiff sought equitable relief and the imposition of fines pursuant to the Code in the amount of $6,000 "for each day said violations" existed.  Similarly, the complaint with respect to the Fillmore property alleged that defendant had applied for a permit to replace a furnace and humidifiers and install carbon monoxide detectors, but that he exceeded this permit by building a new porch and balcony.  This excess work was completed on September 30, 1998.  Again, plaintiff sought equitable relief and the imposition of fines in the amount of $6,000 "for each day" of violations.  The complaint with respect to the Emerald property alleged that defendant had applied for a permit to make minor repairs to the interior, windows and roof, but that he exceeded the permit by building front and rear exterior porches.  This excess work was completed on June 30, 1999.  As with the other complaints, plaintiff sought equitable relief and the imposition of fines in the amount of $6,500 "for each day" of violations on this property.  

For purposes of judicial economy, these three cases were consolidated with a fourth case pending against defendant regarding work he did on property located at 2023 West 70th Street in Chicago (West 70th property).
(footnote: 2)  On February 2, 2001, plaintiff and defendant entered into a consent decree regarding the West 70th property only, and presented it to the trial court.  In this decree, the parties stipulated that defendant committed certain Code violations and it was agreed that he would pay a $25,000 fine, correct the violations and obtain post-construction permits pursuant to the Code on the work he constructed in excess of the original permit on the West 70th property.  The trial court entered the parties' consent decree and continued any legal action or proceedings with respect to the remaining three properties at issue.

On July 18, 2001, ten months after plaintiff had filed the three complaints, defendant applied for post-construction permits for the excess work he did on the Kenneth, Fillmore and Emerald properties.  City building inspectors investigated the excess work at each site and determined that, while it had been completed in a workmanlike manner, this was indeed work that required permits for which defendant had never applied.  The post-construction permit for the excess dormer work on the Kenneth property was granted on December 12, 2001.  The post-construction permit for the excess porch and balcony work on the Fillmore property was granted on October 20, 2001.  The post-construction permit for the excess porch work on the Emerald property was granted on November 6, 2001.  Defendant never filed an answer to any of plaintiff's complaints.

On February 14, 2002, a hearing was held in the trial court with respect to the three subject properties.  Much of the hearing consisted of oral stipulations entered into by plaintiff and defendant in open court.  The parties stipulated as to the excess work done at each of the three properties, that this work required permits, that defendant performed this work in excess of the work identified in the permits he originally obtained, and that he did not apply for new post-construction permits authorizing this work until July 18, 2001.  Specifically, the parties stipulated that the excess work was completed on the Kenneth property in August 1997 and a permit for it was issued on December 12, 2001, whereupon the violations ceased on that property; that excess work was completed on the Fillmore property in September 1998 and a permit for it was issued on October 20, 2001, whereupon the violations ceased on that property; and that excess work was completed on the Emerald property in June 1999 and a permit for it was issued on November 6, 2001, whereupon the violations ceased on that property.  

During this hearing, counsel for plaintiff told the court that he had not yet had the opportunity to calculate how many days existed between the days the work was completed and the issue dates of the post-construction permits agreed upon, which would indicate how many days defendant was in violation of the Code.  Plaintiff's counsel asked the court that its written order contain the number of days.  In response, defense counsel stated that he would not stipulate "with respect to the number of days [of actual violations] only because" he believed there may be "a defense with respect to some of the days being abated based on the failure of the city to issue stop[-work] orders promptly as required by statute."  However, defense counsel stated that he would stipulate to when the work was done and to when the post-construction permits were issued. 

At the conclusion of this hearing, the trial court stated that it was "not sure that [it] would necessarily need" a calculation of the number of days "to make an appropriate determination."  On February 15, 2002, the court issued its written order, which confirmed the stipulations entered into by the parties in open court.  Based on these stipulations, the court concluded that defendant had violated section 13-12-050 of the Code.  In response to plaintiff's complaint seeking fines for these violations, the court entered judgment on plaintiff's behalf in the total amount of $20,000, to be paid by defendant no later than August 15, 2003.

Plaintiff filed a motion to reconsider.  In it, plaintiff argued that the amount the trial court fined defendant was incorrect because it was outside the mandatory range set by the Code, and that the court improperly suspended its ability to collect on the money judgment until August 2003.  The trial court denied this motion, but modified its original judgment to include that defendant would be fined $21,000, which he would have to pay in two installments.  

We note here that on October 15, 2003, plaintiff filed a motion before our court requesting to supplement the record on appeal.  This motion was granted and plaintiff filed a supplemental record on October 22, 2003, for our review.

ANALYSIS

On appeal, plaintiff contends that the fine imposed by the trial court was void because it was outside the range mandated by section 13-12-050 of the Code.  Plaintiff argues that because defendant stipulated to the dates the excess work was completed and the dates the post-construction permits on this work were granted, it was clear that he was in violation of the Code for 3,537 days, and the trial court was required to impose a minimum fine of $100 per day pursuant to the Code, for a total of at least $353,700.  Thus, plaintiff insists that we must vacate the court's order and remand for a recalculation of the fine.  In response, defendant contends that plaintiff fails to present a complete record on appeal and that it fails to show that the court's ruling was against the manifest weight of the evidence because he argued the defense of 
laches
.  Defendant urges that if we remand this cause, we must not do so merely for a recalculation of fines, but must also allow defendant the opportunity to show that a settlement agreement existed between the parties with respect to the three properties or, alternatively, we must order a new trial.  We agree with plaintiff.

Pursuant to the Code, one who wishes to construct or make certain repairs or improvements to a building must apply for a permit to do so, presenting plans which describe these repairs or improvements.  See Chicago Municipal Code §13-20-030 (1999).  If these plans are altered in any way, a new set of plans must be presented illustrating the anticipated alterations in contradiction of the original permit issued and a new permit for the alterations must be obtained, or else a violation of the Code occurs.  See Chicago Municipal Code §13-20-030 (1999).  One who violates the Code by failing to obtain proper permits before the repairs or improvements were undertaken may still obtain a post-construction permit; once city investigators have reviewed and approved the already-constructed work, a new permit may be granted for the alterations in contradiction to the work detailed in the original permit and the accumulation of days in violation of the Code will cease.  See, 
e.g.
, Chicago Municipal Code  §13-32-035 (1999).  Specifically, section 13-12-050 provides the penalty for construction without permit or contrary to the originally issued permit:

"Any person or entity who causes any construction, repairs or alterations to be made in or for any building, structure or any part thereof, without first obtaining the permit or permits required by any of the provisions of this code 
shall be fined not less than $100.00 and not more than $500.00 for each day
 that such construction, repair or alteration shall have existed without a permit authorizing such work."  (Emphasis added.)  Chicago Municipal Code  §13-12-050 (1999). 

Moreover, the Code expressly states that use of the word "shall" as used in its provisions makes those provisions mandatory.  See Chicago Municipal Code  §1-4-100 (1990); see also 
Puss N Boots, Inc. v. Mayor's License Comm'n of the City of Chicago
, 232 Ill. App. 3d 984, 987 (1992) (municipal ordinances are interpreted under the rules of statutory construction, and specifically, where the Chicago Municipal Code uses the word "shall," those provisions must be interpreted as mandatory).

In 
City of Chicago v. Roman
, 184 Ill. 2d 504, 510 (1998), our supreme court made clear that, upon determination of guilt, a trial court must impose the penalty mandated by the legislature and has no authority or discretion to impose a punishment less than that provided by statute.  In 
Roman
, which is directly on point with the instant case, the trial court found the defendant guilty of assault against the elderly, in violation of section 8-4-080 of the Code.  That section states that upon conviction of this offense, "a mandatory sentence of imprisonment 
shall
 be imposed, not to be less than 90 days nor more than 180 days."  (Emphasis added).  Chicago Municipal Code §8-4-080 (1990).  At sentencing, however, the trial court sentenced the defendant to 10 days of community service and to one year of probation.  The City appealed, and the reviewing court reversed the sentence and remanded with directions to resentence the defendant consistent with the mandates of the Code.  Our supreme court agreed, finding the defendant's sentence "illegal and void."  
Roman
, 184 Ill. 2d at 510.  That court declared that a trial court which imposes a lesser sentence than what the pertinent Code section mandates exceeds its authority, and that sentence cannot stand.  See 
Roman
, 184 Ill. 2d at 510 (this applies to every statute or ordinance wherein the legislature has specifically defined its terms and penalties); see also 
City of DeKalb v. White
, 227 Ill. App. 3d 328, 331 (1992) (this specifically applies "to municipal ordinance minimum penalty provisions").  

Our courts have consistently applied this principle in similar causes, finding fines issued below the minimum amount mandated by statutory code to be improper, and calling for their vacation and remand with orders to recalculate the penalty pursuant to the specific statutory range.  See 
City of Chicago v. Krisjon Construction Co.
, 246 Ill. App. 3d 950, 955 (1993) (noting that a trial court "is not at liberty to ignore plain and unambiguous statutory language" of Chicago Municipal Code); 
White
, 227 Ill. App. 3d at 330-31 (where the defendant was found guilty of violating city municipal speeding ordinance and city's code mandated a $68 fine, but trial court imposed a total fine of $58, this disregard for the set minimum penalty was "an abuse of discretion and, therefore, reversible error," and cause was remanded with instructions to recalculate fine); 
City of Naperville v. Bernard
, 139 Ill. App. 3d 784, 785-86 (1985) (where trial court failed to impose fine for violation as mandated by penalty provision of city's municipal code, this was error and remand was required for assessment of fine pursuant to that provision); 
City of Springfield v. Ushman
, 71 Ill. App. 3d 112, 117-18 (1979) (trial court committed reversible error in imposing fines less than minimum amount set forth in municipal code, and remand was required for the imposition of a new fine in accordance with code's provisions).

In the instant case, the trial court declared, both during the oral hearing on February 14, 2002, and in its written order, that defendant was in violation of the Code for his excess work on the Kenneth, Fillmore and Emerald properties, done without proper permits.  Significantly, several critical stipulations were entered into by the parties before the court.  Defendant stipulated to his violations at each property and that, although the work complied with the Code insofar as the manner in which it was constructed, it did not comply insomuch as it was performed without being covered by the appropriate permits.  In this respect, defendant does not challenge on appeal the court's finding of his guilt.  What is more, although neither party stipulated as to the specific number of days defendant was in violation of the Code because neither had counted the number of days at that time, the record clearly shows that defendant stipulated each time as to the months in which he completed the excess work (August 1997, September 1998 and June 1999, respectively), as well as the exact dates on which the post-construction permits for this excess work were granted (December 12, 2001, October 20, 2001, and November 6, 2001, respectively).  Giving him the benefit of calculation, as plaintiff does here by beginning to count from the final date of each month
, it is irrefutable that defendant was in violation of the Code for at least 1,563 days on the Kenneth property (August 31, 1997, to December 12, 2001), at least 1,115 days on the Fillmore property (September 30, 1998, to October 20, 2001) and at least 859 days on the Emerald property (June 30, 1999, to November 6, 2001), for a minimum total of 3,537 days.  Applying the mandatory penalty provision found in section 13-12-050 of the Code, as the trial court was required to do, the minimum fine to be issued against defendant must be at least $353,700 ($100 per day).  See Chicago Municipal Code §13-12-050 (1999).  The trial court's imposition of a $21,000 fine was woefully in contradiction of both the parties' agreed-upon stipulations at trial and the mandates of the Code.  Therefore, the court's fine cannot stand, and this cause must be remanded for a recalculation of the fine to be imposed pursuant to the monetary range set forth in section 13-12-050.  See 
Roman
, 184 Ill. 2d at 510; 
White
, 227 Ill. App. 3d at 330-31; 
Bernard
, 139 Ill. App. 3d at 785-86; 
Ushman
, 71 Ill. App. 3d at 117-18.

Defendant contends on appeal that the $21,000 fine was appropriate for several reasons.  He asserts that plaintiff failed to present a complete record on review by omitting transcripts from "each time the parties were before the court," and that there was "other evidence" presented that validates the fine imposed.  Defendant argues that this "other evidence" included a consent decree between the parties as well as his assertion of the defense of 
laches
 due to plaintiff's failure to issue stop-work orders according to the Code at the time of construction, and that the court must have accepted this defense and calculated a total of 210 days of violation, not 3,537 days.  Defendant further insists that, if we were to order remand, we cannot do so simply for recalculation of the fine.  He claims that, due to "the uniqueness of housing court" and the fact that plaintiff's complaints sought total damages in the amount of only $6,000, we must allow him the opportunity to file an answer and order an entirely new trial.  However, we do not find any of these contentions meritorious in light of the record.

First, as to defendant's assertion that plaintiff failed to file a complete record on appeal because it did not include a transcript of every instance when the parties were in housing court, we find, to the contrary, that plaintiff filed an adequately sufficient record for review.  Initially, plaintiff filed one volume of record with our court which contained the two orders appealed from and a complete transcript of the February 14, 2002, hearing, which comprises the basis for this appeal.  It was at this hearing that the pertinent stipulations were made and the trial court heard evidence that formed its decision.  In fact, the court's written order issued on the following day states that the court was rendering its holding solely "based on the foregoing stipulations."  There is nothing in the record to indicate that any other hearing which may have been had involving these parties adduced anything that additionally impacted the decision rendered.  

Moreover, we note that plaintiff filed before our court, and we granted, a motion to supplement the record on appeal.  Plaintiff then filed an additional volume of record, which includes transcripts from seven other occasions when the parties appeared in housing court before the February 14, 2002, hearing: November 2, 2000, in which inspection dates were arranged and an attorney filed an appearance on behalf of defendant; January 18, 2001, in which a new attorney filed an appearance for defendant and a conference date was set with respect to the West 70th property; February 1, 2001, in which a settlement agreement as to the West 70th property was presented to the trial court; June 1, 2001, in which the three subject properties were discussed for the first time and a status date with respect to issues concerning them was set; July 20, 2001, in which the parties stipulated that defendant had completed the provisions of the settlement with respect to the West 70th property and the cause concerning the three subject properties was continued; December 14, 2001, in which proceedings were continued without further discussion; and December 20, 2001, in which proceedings were continued again without further discussion.  According to the half-sheets contained in the record, there were only two other instances in which the parties appeared in court before the February 14, 2002, hearing–December 27, 2001, and January 3, 2002.  While it is true that plaintiff did not include transcripts from those days, the half-sheets indicate that nothing substantive occurred on either occasion.  In addition, if defendant felt that the record in this cause as filed by plaintiff omitted critical information pertinent to our review, then he had a duty to supplement it on his own behalf, an action which he failed to undertake here.  See 166 Ill. 2d R. 323(a) (appellant is to file record 14 days after filing notice of appeal; appellee then has 7 days to serve upon appellant designation of additional portions of record he deems necessary for inclusion); 
Nicholl v. Scaletta
, 104 Ill. App. 3d 642, 646 (1982) ("[w]here the appellee fails to ask for additional portions of the record, he acquiesces in the appellant's opinion that every part of the record essential to properly present the questions raised on appeal has been certified to the reviewing court").

Second, with respect to the "other evidence" defendant insists existed here, we find his assertions wholly inaccurate.  Defendant argues that a settlement agreement and consent decree had been entered into by the parties covering both the West 70th property and the three subject properties, and that while he cooperated with them, plaintiff failed to comply with their terms.  This is a blatant misstatement of the record.  No such agreement incorporating the West 70th property and the Kenneth, Fillmore and Emerald properties was ever discussed during the February 14, 2002, hearing, or at any other time.  In fact, it is clear that the West 70th property was never addressed in this manner therein and the stipulations entered into at that hearing, as well as the penalties assessed, affected only the three subject properties.  Moreover, the supplemental record profusely demonstrates both plaintiff and defendant's understanding that the solitary consent decree reached with respect to the West 70th property had absolutely no bearing on the three subject properties.  On February 1, 2001, the parties presented the consent decree to the trial court on the West 70th property, asking for a trial date to be set on the remaining three properties.  At that hearing, defendant specifically told the trial court that while he believed plaintiff may reward him for his cooperation on the West 70th property in petitioning for fines on the other properties, he recognized that there were "no promises" with respect to these anticipated fines.  Also, the court stated that it was convinced "settlement" had been "worked out in [the] 2023 West 70th [property]," and admonished defendant with respect to compliance on that property only.  At the June 1, 2001 hearing, defendant moved for an extension of time to satisfy that consent decree, and upon discussion in open court, specifically acknowledged that an agreement with respect to the remaining three properties still did not exist.  And, on July 20, 2001, the parties advised the trial court that while a settlement involving the three properties was anticipated, no agreement had yet been reached.  Thus, we fail to find any support for defendant's assertion that a consent decree incorporating the three subject properties existed.

The other "evidence" defendant claims existed but was not in the record on appeal is his alleged assertion of the defense of 
laches
 due to plaintiff's failure to issue stop-work orders according to the Code.  He argues that he mentioned this affirmative defense in the court below several times, as exhibited by his refusal at the February 14, 2002, hearing to stipulate to the exact number of days he was in violation of the Code.  Defendant believes that the $21,000 fine was appropriate because the trial court must have accepted this defense and that based thereon, it calculated only 210 days of violations.  We do not accept defendant's assertions for several reasons.

Even ignoring the clear evidence in this cause demonstrating that defendant stipulated to the months in which the excess work was completed and the exact dates the new post-construction permits were issued leading to the obvious calculation of days in violation, we note that the law is well-established that every allegation of a complaint that is not explicitly denied is deemed admitted.  See 735 ILCS 5/2-610(b) (West 2000).  Here, defendant never filed an answer denying plaintiff's allegations in its complaints on the three properties; thus, plaintiff's assertions contained therein with respect to how long defendant was in violation must stand.  Moreover, we note that any facts constituting the affirmative defense of 
laches
 must be plainly set forth in an answer or reply to a complaint.  See 735 ILCS 5/2-613(d) (West 2000); 
People ex rel. Casey v. Health & Hospitals Governing Comm'n of Illinois
, 69 Ill. 2d 108, 113 (1977).  Again, defendant did not file an answer in this cause, let alone raise the defense of 
laches
 therein.  Any reference to it now has been forfeited and consideration of it is improper.  See 
O'Connell Home Builders, Inc. v. City of Chicago
, 99 Ill. App. 3d 1054, 1059 (1981).  

Even were we to address the merits of a 
laches
 defense, we find that it would not succeed.  
Laches
 is a defense which may be asserted against a plaintiff who has knowingly "slept" on its rights and, thus, is deemed to have acquiesced to the actions of the defendant.  See 
Van Milligan v. Board of Fire & Police Commissioners of the Village of Glenview
, 158 Ill. 2d 85, 90 (1994); 
La Salle National Bank v. Dubin Residential Communities Corp.
, 337 Ill. App. 3d 345, 350 (2003).  To be successful with this defense, the burden is on the defendant to show a lack of due diligence on the part of the plaintiff in asserting its rights against him and that this delay caused him prejudice.  See 
Van Milligan
, 158 Ill. 2d at 90-91; 
La Salle
, 337 Ill. App. 3d at 351.  That is, the defendant must prove not only that a considerable amount of time has passed, but also that the plaintiff had knowledge of the facts giving rise to its claim and chose not to act upon them.  See 
La Salle
, 337 Ill. App. 3d at 352.  Where, as here, a defendant seeks to apply the defense
 against a governmental entity, our courts have expressed a consistent reluctance to impose 
laches
 to its actions unless the defendant can show "unusual," "extraordinary," or "compelling circumstances."  
Van Milligan
, 158 Ill. 2d at 90-91 (this is because the defense may impair the functioning of the entity and thus adversely affect the public, simply due to the negligence or inattention of government officials).  Also, our courts have specifically concluded that "mere nonaction of governmental officers is not sufficient" to support a claim of 
laches
.  
City of Marengo v. Pollack
, 335 Ill. App. 3d 981, 989 (2002); 
County of Du Page v. K-Five Construction Corp.
, 267 Ill. App. 3d 266, 275 (1994).  Rather, a positive or affirmative act must have been taken by such officers, inducing the action of the defendant under the circumstances and making it inequitable to permit the governmental entity to retract what its officers had done.  See 
Du Page
, 267 Ill. App. 3d at 275; accord 
Marengo
, 335 Ill. App. 3d at 989 (where city's representatives failed to realize upon inspection of newly erected structures that defendant was violating ordinance with respect to outdoor storage limit, this was only nonaction and was not a basis for assertion of 
laches
 defense regarding that storage limit).  A defendant's suggestion that he might have asserted his rights differently or have entered into some kind of settlement had the plaintiff promptly asserted its rights is only speculative and does not support the validity of a 
laches
 defense.  See 
Van Milligan
, 158 Ill. 2d at 91.  

In the instant case, it is true, as defendant points out, that the Code requires plaintiff to issue stop-work orders on construction that is in violation of the Code's provisions.  See Chicago Municipal Code §13-12-080 (1999).  However, this alone does not support a valid 
laches
 defense here.  The record reflects that the original permits defendant obtained made no mention of the excess work he completed on the three properties, and that inspections of the properties occurred in early August 2000, after the excess work was completed.  Thus, defendant's argument with respect to plaintiff's failure to issue the stop-work orders is moot; he fails to show that plaintiff knew of the excess work 
before
 it was completed so it could "stop" it.  Issuing stop-work orders in August 2000 would have been futile.  Regardless, plaintiff's failure to issue stop-work orders constitutes only nonaction and cannot be a basis for a 
laches
 defense.  See 
Marengo
, 335 Ill. App. 3d at 989.  

In addition, defendant does not meet the elements of this defense.  There is no evidence that plaintiff lacked due diligence in asserting its claims here; to the contrary, the record shows that plaintiff discovered the excess work in August 2000 upon inspection and filed complaints asserting that the work was contrary to permit issuance on September 29, 2000, only two months later.  Nor does defendant present any evidence to prove he was prejudiced by this short delay; again, to the contrary, the record shows that even after plaintiff filed its complaints alerting him that it knew he was in on-going violation of the Code on the three properties, defendant waited some 10 months (until July 18, 2001) to apply for post-construction permits to cease the violations.  Thus, it was defendant, and not plaintiff, who knowingly slept on his opportunity under the Code to remedy his own violations and abate his penalties.  Therefore, we conclude that the affirmative defense of 
laches
 is inapplicable to the instant case.

Finally, we address defendant's assertion that, based on the "uniqueness" of housing court and the prayer for relief in plaintiff's complaints, remand of this cause requires an opportunity for him to file an answer with affirmative defenses and participate in an entirely new trial.  We find no basis for either.  Defendant insists that housing court proceeds at such a fast pace that the formal legal procedure of filing pleadings and answers, conducting discovery and taking depositions is not followed, and thus, we cannot hold his failure to participate here against him.  However, defendant provides us with no legal citation for such an assertion, and we know of no legal precedent that excludes housing court, or any other court in this state for that matter, from our rules of civil procedure.  Evidently, even in the "fast pace" of this housing court matter, plaintiff was able to file not one, but three, complaints, conduct inspections on the three properties, seek out expert opinions from several city construction investigators and present all this to the trial court.  The parties also appeared in court some 9 times in the 17-month period between the filing of the complaints and the trial date.  There were ample opportunities for defendant to file an answer and assert affirmative defenses; he simply chose not to do so, and for this reason, does not merit the opportunity now.  Moreover, his assertion that he was "unfairly surprised" when plaintiff sought damages in excess of $6,000 is incredulous.  Plaintiff filed three separate complaints, each explicitly seeking penalties of $6,000 on the Kenneth and Fillmore properties and $6,500 on the Emerald property "for each day" defendant was in violation of the Code.  Thus, it was more than clear to defendant from these complaints that the "worst case scenario," as he terms it, could be much more than $6,000.  That he would have "approached the case differently" (
i.e.
, assert affirmative defenses) had "he believed the amount of monetary fines being sought" would be more than $6,000 is irrelevant.  

CONCLUSION

Accordingly, for the foregoing reasons, we vacate the judgment of the trial court and remand with instructions that only the fine against defendant in this cause be recalculated pursuant to the range of $100 to $500 a day as mandated by section 13-12-050 of the Code, based on 3,537 days of violations.

Vacated; remanded with instructions.

O'MARA FROSSARD, P.J., and GALLAGHER, J., concur.

FOOTNOTES
1:

Although several other parties were named as defendants in this cause originally consolidated at the trial level, these parties have been dismissed or otherwise have no part in this case.  Accordingly, the instant appeal involves only defendant Alessia.

2:

We also note for the record that defendant was involved in a similar construction-permit situation with respect to another property located at 4606-08 South Indiana in Chicago, where a building defendant was working on collapsed, killing one worker and severely injuring another.  That property, however, is not involved in the instant appeal.