LISA MADIGAN, Attorney General of Illinois, *ex rel.* THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES, Plaintiff-Appellee, v. SONIA B. YBALLE, Defendant and Third-Party Plaintiff-Appellant (Pediatric Center of Chicago, Ltd., Third-Party Defendant-Appellee).

First District (1st Division)  No. 1—08—0404

Opinion filed December 14, 2009.

482

Hinshaw & Culbertson LLP, of Chicago (Stephen R. Swofford, Nancy G. Lischer, Daniel Purdom, and Clay Ullrick, of counsel), for appellant.

Lisa Madigan, Attorney General, of Chicago (Paul Racette, Assistant Attorney General, of counsel), for appellee Madigan *ex rel.* Department of Healthcare and Family Services.

Edward J. Green and Daniel M. Cordis, both of Foley & Lardner LLP, of Chicago, for appellee Pediatric Center of Chicago, Ltd.

JUSTICE PATTI delivered the opinion of the court:

Defendant and third-party plaintiff, Sonia Yballe, appeals an order of the trial court dismissing the third-party complaint that she filed against third-party defendant Pediatric Center of Chicago, Ltd. (PCC), as well as an order granting summary judgment in favor of plaintiff, Lisa Madigan, Attorney General of Illinois. For the reasons that follow, we affirm the judgment of the trial court.

In 1992, Sonia Yballe, a licensed physician with the Illinois Department of Financial Aid and Professional Regulation, became an employee and shareholder of PCC. At that time, she was also a vendor of medical services to patients who received public assistance under the Medical Assistance Program of the State of Illinois (Medicaid), which was administered and overseen by the Illinois Department of

Public Aid, the predecessor of the Illinois Department of Healthcare and Family Services.[1] On March 21, 1992, Yballe signed and returned an "Alternate Payee Agreement" form to the Department. Pursuant to the provisions contained in the form, Yballe agreed to permit PCC to submit to the Department bills for services that she provided to Medicaid patients and directed the Department to send any Medicaid reimbursements otherwise payable to Yballe directly to PCC. The agreement specified that "Bills submitted will only be for direct patient care rendered or supervised by that practitioner, i.e., services for which the practitioner assumes full responsibility as specified in Provider Handbooks." Nonetheless, the agreement also stated: "The practitioner retains full responsibility for any bills submitted in his name to the Department of Public Aid even though an alternate payee has been designated. This responsibility includes liability to repay any overpayment made by the Department." In March 1996, the Department conducted an audit of Yballe's business and professional records for the period of February 1, 1994, through July 31, 1995, and discovered numerous billing irregularities. According to the results of its audit, the Department initially determined that Yballe received overpayments amounting to $1,596,541.66, but it later reduced the overpayment amount to $957,147.79. Accordingly, on September 15, 1997, the Department served Yballe with a notice of intent to terminate her as a vendor of medical services to Medicaid patients and to recover the overpayments.

On September 29, 1997, Yballe, in turn, requested an administrative hearing regarding the Department's findings. Thereafter, on December 2, 1997, PCC filed a motion to intervene in the Department's action, and Administrative Law Judge Donnenberg granted PCC's motion on January 7, 1998. In its motion, PCC indicated that it sought intervention because it would be affected by any adverse judgment rendered in the cause. The hearing commenced on January 26, 1997, and continued over several years. On June 5, 2000, PCC moved to withdraw from the proceedings. The Department consented to PCC's withdrawal and Judge Donnenberg granted PCC's motion. On September 7, 2000, Judge Donnenberg upheld the decision of the Department to terminate Yballe's eligibility to participate in the Medicaid program and to seek repayment from her in the amount of $957,147.79. Thereafter, on October 19, 2000, Ann Patla, director of the Department, formally adopted Judge Donnenberg's decision that

---

[1]The Illinois Department of Public Aid and the Illinois Department of Healthcare and Family Services will be referred to as the "Department" throughout this disposition.

the Department was entitled to recover $957,147.79 from Yballe. In a written letter, Patla informed Yballe that "[u]nless satisfactory arrangements are made for the payment of this sum *** the Department will initiate legal action to recover it." The letter also informed Yballe that its decision was final and binding, but that she could appeal the decision by filing a complaint within 35 days.

Yballe did not seek judicial review of the Department's administrative decision, nor did she make any payments to the Department. Accordingly, on December 5, 2005, the Attorney General, on behalf of the Department, filed a complaint seeking to enforce the Department's final administrative decision and recoup payment of $957,147.79 plus statutory interest from Yballe. On April 21, 2006, Yballe filed her answer to the Attorney General's complaint, acknowledging the final administrative decision. Yballe did not assert any affirmative defenses against the Attorney General; however, she did file a motion for leave to file a third-party complaint against PCC.

The trial court granted Yballe leave to file her third-party complaint on May 8, 2006, and she filed her pleading on May 16, 2006. In her complaint, Yballe alleged that at all relevant times, she was party to an alternate payee agreement with PCC, and that pursuant to the terms of that agreement, PCC submitted claims for services to the Department under Yballe's vendor identification number and received all of the payments made by the Department in satisfaction of claims submitted by PCC under her number. Yballe alleged that she never personally received payment from the Department for claims submitted by PCC under her vendor identification number. Yballe's third-party complaint sought relief pursuant to three counts: breach of contract, implied contractual indemnity, and declaratory judgment. Yballe ultimately sought a judgment against PCC to recover the costs she incurred in defending herself in the underlying lawsuit.

PCC responded on January 22, 2007, by filing a motion to dismiss Yballe's third-party complaint pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 2006)), arguing in pertinent part that the claims advanced in Yballe's complaint were time-barred by the two-year statute of limitation for contribution and indemnification actions set forth in section 13—204 of the Code (735 ILCS 5/13—204 (West 2006)). Specifically, PCC argued that all three claims raised in Yballe's complaint were essentially disguised indemnification claims and that the statute of limitations began running either on September 29, 1997, when Yballe requested a formal hearing on the Department's decision, January 29, 1999, the first hearing date of the Department's recovery action, or at the very latest, on October 19, 2000, the date the final administrative

order was entered. PCC also asserted that collateral estoppel barred Yballe's claims because the Department had already determined that Yballe was solely liable for the Medicaid over billings and further argued that Yballe's claims were also barred by *laches* as Yballe delayed bringing her indemnity claims against PCC until April 2006.

Thereafter, on March 1, 2007, the Attorney General filed a motion for summary judgment, arguing that there was no genuine issue of material fact that Yballe was liable for $957,147.79 and that judgment in the Attorney General's favor was required as a matter of law.

Yballe filed responses to both motions. In response to PCC's motion to dismiss, Yballe contended that her third-party complaint was not time-barred. Yballe asserted that she raised three distinct causes of action and that none of the claims accrued until the Attorney General filed the enforcement action on December 5, 2005, and accordingly, Yballe's third-party complaint, filed May 16, 2006, was timely. Specifically, Yballe argued that the 10-year statute of limitations for actions based on written contracts as set forth in section 13—206 of the Code (735 ILCS 5/13—206 (West 2006)) applied to her breach of contract and declaratory judgment counts, and both were raised within 10 years after the Attorney General filed her complaint. Yballe further argued that assuming the two-year statute of limitations set forth in section 13—204 of the Code (735 ILCS 5/13—204 (West 2006)) applied to her indemnity count, this claim was also raised in a timely manner as her complaint was filed within two years of its accrual date. Yballe also rejected PCC's collateral estoppel and *laches* affirmative defenses. She contended that collateral estoppel did not apply because the Department never resolved any issues between herself and PCC based on the alternate payee agreement. Yballe further argued that *laches* was inapplicable as PCC was not prejudiced by her delay in seeking indemnity because it had been aware of its potential liability when it sought to intervene in the Department's earlier proceedings.

In response to the Attorney General's motion for summary judgment, Yballe contended that she did not possess the financial ability to satisfy the Department's judgment and argued that *laches* served to bar the Attorney General's defense. In pertinent part, Yballe argued that the Attorney General waited five years to enforce the Department's administrative decision and that the delay prejudiced her claims against PCC. Yballe also sought a stay on the Attorney General's claims until her third-party claims against PCC were resolved.

On September 6, 2007, the trial court, in a detailed written order, granted PCC's motion to dismiss. In pertinent part, the trial court

found that Yballe's breach of contract count was really a "cleverly disguised" indemnity action and that her breach of contract and implied indemnity counts were time-barred because her complaint was not filed within the two-year statute of limitations period for indemnity actions as required by section 13—204 of the Code (735 ILCS 5/13—204 (West 2006)). The trial court observed that her claims were "time-barred regardless of the date one chooses time to start counting. Time could start when the initial suit was filed against Yballe (September 29, 1997) or the date of the final administrative decision (October 5, 2000). Even if the claim could be characterized as an oral contract dispute, the 5-year statute of limitations [period set forth in section 13—205 of the Code (735 ILCS 5/13—205 (West 2006))] would have began [*sic*] to run on September 15, 1997 (when the Department initiated its recovery action against Yballe) and thus ending on September 15, 2002."

The trial court also found that Yballe's claim for declaratory judgment was barred by defensive collateral estoppel. In so finding, the trial court observed that the same issue was previously litigated and that the Department issued a final decision on the matter on October 5, 2000, finding Yballe solely liable for the $957,147.79 in Medicaid overpayments. Although PCC was not party to the final decision, the trial court noted that PCC had been previously represented in the prior action before being dismissed from the case and, accordingly, PCC could not now be pursued on this matter that had been previously decided.

Thereafter, on September 20, 2007, the trial court granted the Attorney General's motion for summary judgment, finding that a final administrative decision was entered against Yballe on October 19, 2000, and that she failed to file an appeal within the requisite 35-day statutory period. Accordingly, the trial court found that Yballe was barred from relitigating any issues previously raised during the administrative proceedings and that summary judgment in favor of the Attorney General was proper because Yballe failed to present a relevant genuine issue of material fact upon which the court could grant relief.

Yballe subsequently filed a motion to reconsider and vacate the September 6, 2007, order dismissing party complaint against PCC, as well as the September 20, 2007, order awarding summary judgment in favor of the Attorney General. The trial court denied Yballe's motion to reconsider on February 4, 2008, and this appeal followed.

Yballe first contends that the trial court erred in granting PCC's motion to dismiss. Specifically, she contends that the trial court erred in finding that the two-year statute of limitations contained in section

13—204 of the Code barred her complaint. Relying on our supreme court's recent decision in *Travelers Casualty & Surety Co. v. Bowman,* 229 Ill. 2d 461 (2008), she contends that section 13—204 only applies to lawsuits seeking indemnity where the underlying issue concerns an injury to a person or to property. Accordingly, because Yballe's action seeks indemnity for damages incurred as a result of violating the Department's Medicaid regulations, she argues that the two-year statute of limitations outlined in section 13—204 is inapplicable to the breach of contract and implied indemnity counts raised in her complaint. Instead, because her claim for indemnity against PCC arises from the written alternative payee agreement, Yballe contends that her breach of contract count is subject to the 10-year statute of limitations set forth in section 13—206 of the Code (735 ILCS 5/13—206 (West 2006)), which applies to actions based on written contracts.

■ A motion to dismiss pursuant to section 2—619(a)(9) of the Code admits as true the legal sufficiency of the factual allegations of the plaintiff's claim, but asserts that an "affirmative matter" exists that nonetheless defeats the claim. 735 ILCS 5/2—619(a)(9) (West 2006); *Czarobski v. Lata,* 227 Ill. 2d 364, 370 (2008). The purpose of a section 2—619 motion is to dispose of issues of law and easily proven issues of facts early in the litigation process. *Czarobski,* 227 Ill. 2d at 369; *Skarin Custom Homes, Inc. v. Ross,* 388 Ill. App. 3d 739, 743 (2009). Pursuant to section 2—619(a)(5) of the Code, a cause of action may be dismissed if the plaintiff failed to commence the suit within the applicable statute of limitations. 735 ILCS 5/2—619(a)(5) (West 2006). When ruling on a section 2—619 motion to dismiss, courts must construe the pleadings in the light that is most favorable to the nonmoving party. *Wackrow v. Niemi,* 231 Ill. 2d 418, 422 (2008). A trial court's ruling on a motion to dismiss pursuant to section 2—619 of the Code is subject to *de novo* review. *Czarobski,* 227 Ill. 2d at 369; *Skarin,* 388 Ill. App. 3d at 743. Similarly, the applicability of a statute of limitations to an action is also subject to *de novo* review. *Travelers,* 229 Ill. 2d at 466.

■ To determine the statute of limitations applicable to a claim, it is essential to evaluate the complaint in order to ascertain the true character of a plaintiff's cause of action. See *Armstrong v. Guigler,* 174 Ill. 2d 281, 286-87 (1996). Ultimately, "[t]he determination of the applicable statute of limitations is governed by the type of injury at issue, irrespective of the pleader's designation of the nature of the action." *Armstrong,* 174 Ill. 2d at 286. Accordingly, the title a plaintiff employs to describe her cause of action is not dispositive as to the true nature of the action or to the limitations period that applies to that action. *Armstrong,* 174 Ill. 2d at 286-87. Indeed, "[a] party simply may

not circumvent a shorter period of limitations, or attempt to breathe new life into a stale claim, merely by means of artful pleading." *Armstrong*, 174 Ill. 2d at 287.

Here, although Yballe pled three separate causes of action in her complaint, a review of her complaint shows that it is simply a single indemnity action. While she references the alternate payee agreement, it is clear that she is merely seeking indemnification for expenses she incurred during the Department's prior administrative proceedings. See *Armstrong*, 174 Ill. 2d at 287 (recognizing that although a complaint may speak in terms of a contractual breach, the claim is not necessarily a true breach of contract claim that is subject to the 10-year statute of limitations applicable to such claims); *United General Insurance Co. v. AmeriTitle, Inc.*, 365 Ill. App. 3d 142, 149 (2006) (finding that the claim raised in the plaintiff's complaint was one for indemnification even though the plaintiff indicated it sought relief for breach of contract because it was clear from the complaint that the plaintiff was seeking indemnification for expenses incurred in a prior suit and not damages normally sought in breach of contract suits). Accordingly, despite the designations employed by Yballe in her complaint, we find that her cause of action is one for indemnity. Having determined the true nature of her complaint, we now evaluate which statute of limitations period governs her claim. We address Yballe's first argument that the trial court erred in finding that her complaint was barred by the two-year statute of limitations period applicable to certain contribution and indemnity claims set forth in section 13—204 (735 ILCS 5/13—204 (West 2006)) of the Code.

Section 13—204 provides:

"(a) In instances where no underlying action seeking recovery for injury to or death of a person or injury or damage to property has been filed by a claimant, no action for contribution or indemnity may be commenced with respect to any payment made to that claimant more than 2 years after the party seeking contribution or indemnity has made the payment in discharge of his or her liability to the claimant.

(b) In instances where an underlying action has been filed by a claimant, no action for contribution or indemnity may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action or more than 2 years from the time the party, or his or her privy, knew or should reasonably have known of an act or omission giving rise to the action for contribution or indemnity, whichever period expires later." 735 ILCS 5/13—204 (West 2006).

In *Travelers*, our supreme court was called upon to interpret the applicability of this Code section as it pertained to the indemnity ac-

tion raised in the plaintiff's complaint. In that case, the plaintiff's action was based on the defendants' purported breach of their duties pursuant to a written indemnification agreement, and the court held that the two-year statute of limitations period set forth in section 13—204 of the Code did not apply. *Travelers*, 229 Ill. 2d at 467, 472-73. In so finding, the court observed that pursuant to the plain language of the Code "[s]ections 13—204(a) and 13—204(b) are plainly addressing cases involving the allocation of damages in connection with an underlying tort claim for injury to person or property. Sections 13—204(a) and 13—204(b) are not applicable when the basis for indemnity rests on a written indemnity agreement." *Travelers*, 229 Ill. 2d at 473. Accordingly, because the plaintiff's indemnification claim was based upon the defendants' violation of a written indemnification agreement, the court found that the 10-year statute of limitations period applicable to causes of actions for breach of contract set forth in section 13—206 of the Code (735 ILCS 5/13—206 (West 2006)) governed the plaintiff's cause of action. *Travelers*, 229 Ill. 2d at 476.

■ Here, applying the reasoning of *Travelers* to the case at bar, we agree with Yballe that the trial court erred in applying the two-year statute of limitations period set forth in section 13—204 of the Code to her complaint (735 ILCS 5/13—204 (West 2006)). This case does not involve the allocation of damages in connection with an underlying tort claim for an injury to person or property; rather, the underlying claim involves Yballe's violations of Department regulations. Thus, we find that the limitations period set forth in section 13—204 is inapplicable to her complaint.

■ Instead of the two-year statutory period of section 13—204, Yballe, relying again on *Travelers*, contends that the 10-year statute of limitations of section 13—206 of the Code applies to her complaint (735 ILCS 5/13—206 (West 2006)). Specifically, she contends that "[t]he *Travelers* court further held that where a claim for indemnity arises out of a written contract, the ten-year statute of limitations of 735 ILCS 5/13—206 applies. Thus, with respect to count I of the third-party complaint, which is based on a written contract, the statute of limitations is ten years."

Section 13—206 of the Codes provides for a 10-year statute of limitations for claims based on written contracts. 735 ILCS 5/13—206 (West 2006). In pertinent part, section 13—206 states:

> "[A]ctions on bonds, promissory notes, bills of exchange, written leases, *written contracts*, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued." (Emphasis added.) 735 ILCS 5/13—206 (West 2006).

Here, unlike the plaintiff in *Travelers*, Yballe's claim for indemnity does not rest on an express written indemnity agreement. *Travelers*, 229 Ill. 2d at 468. Indeed, no such written agreement exists in the case at bar; rather, Yballe's indemnity claim is based on a theory of implied indemnity. Accordingly, we find that the 10-year statute of limitations set forth in section 13—206 of the Code does not apply; rather, we find that the 5-year statute of limitations set forth in section 13—205 of the Code (735 ILCS 5/13—205 (West 2006)), which applies to "all civil actions not otherwise provided for," governs her complaint.

Yballe nonetheless contends that notwithstanding the application of the five-year statute of limitations period of section 13—205 of the Code (735 ILCS 5/13—205 (West 2006)), her third-party complaint was timely. Specifically, she contends that the trial court reasoned incorrectly that her indemnity action accrued either when the Department brought its administrative action against her on September 15, 1997, or when the administrative action became final on October 5, 2000. Yballe acknowledges that an indemnity action does not accrue until a judgment is entered against a defendant. She suggests, however, that no judgment was entered against her until September 20, 2007, when the trial court awarded summary judgment in favor of the Attorney General in this enforcement action, and thus her indemnity claim did not accrue until that date.

Section 13—205 of the Code, in pertinent part, provides:

"[A]ctions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13—205 (West 2006).

As a general rule:

" 'Under Illinois law, a defendant entitled to bring an implied contract of indemnity action has a choice of filing a third-party complaint against a party who may be liable to indemnify him as part of the original action [citation], or of waiting until the original action is over and filing a separate action for indemnity if he is found liable. In effect, Illinois law allows the third-party indemnity claim to be filed before it accrues, in order to promote settlement of all claims in one action. The third-party claim cannot be determined, however, before the underlying claim establishing liability and damages is determined. It follows that the cause of action for an implied contract of indemnity does not accrue until the defendant has a judgment entered against him or until he settles

the claim made against him. Only at that point does the cause of action for indemnity accrue and the statute of limitations begin to run.' " *Guzman v. C.R. Epperson Construction, Inc.*, 196 Ill. 2d 391, 399-400 (2001), quoting *Anixter Brothers, Inc. v. Central Steel & Wire Co.*, 123 Ill. App. 3d 947, 953 (1984).

■ Here, Yballe's argument that her indemnification claim against PCC did not accrue until September 20, 2007, the date on which the trial court entered judgment in favor of the Attorney General in this enforcement action, ignores the existence and nature of the Department's prior administrative decision. It is well settled that the Department has the authority to "conclusively determine the amount of overpayments to a Medicaid provider and to enter an administrative order in the nature of a money judgment." *Department of Public Aid v. Hokin*, 175 Ill. App. 3d 646, 654 (1988). The Department issued its decision in this case on October 19, 2000, and its decision became final when Yballe elected not to seek administrative review of its decision within 35 days. 735 ILCS 5/3—102 (West 2006) (pursuant to Administrative Review Law, an administrative decision becomes final when a party does not timely seek judicial review of the decision); 735 ILCS 5/3—103 (West 2006) (a party seeking review of an administrative decision must do so within 35 days after the agency issues its decision). Accordingly, Yballe had a judgment entered against her in October 2000, and it is at that time that her indemnity action against PCC accrued. Yballe did not seek to file an indemnity action until the Attorney General filed a complaint seeking enforcement of the Department's prior decision.[2] Thus, as the trial court observed, Yballe's third-party indemnity complaint, filed May 16, 2006, was untimely as it was not filed within five years after her cause of action for indemnity accrued. Accordingly, we do not find that the trial court erred in dismissing Yballe's third-party complaint as untimely.

Having found that Yballe's complaint is time-barred, we need not address her alternative argument that the trial court erred in applying the doctrine of collateral estoppel to her third-party complaint. Instead, we address her argument that the trial court erred in awarding summary judgment in favor of the Attorney General.

---

[2]The enforcement action filed by the Attorney General was simply a mechanism to induce Yballe to comply with the Department's finding that she was liable for the Medicaid overpayments. Indeed, Yballe's liability had already been conclusively determined by the Department pursuant to administrative review law. It was only due to Yballe's failure to repay the Department that it became necessary for the Attorney General to seek enforcement of the money judgment on the Department's behalf.

Specifically, Yballe contends that the trial court erred in awarding summary judgment in favor of the Attorney General because her *laches* defense cannot be resolved until her third-party complaint is resolved on the merits. She argues that "[b]ecause the Department waited more than 5 years to enforce the administrative finding, and because the trial court would not allow the third party complaint to proceed, Dr. Yballe has no way of knowing whether PCC has the assets to satisfy the judgment. If PCC does not have the current ability to do so, there is an issue as to whether its inability is a result of the passage of time, and thus as a result of the Department's dilatory conduct."

Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2006). In reviewing a motion for summary judgment, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party to determine whether a genuine issue of material fact exists. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Although summary judgment has been deemed a "drastic means of disposing of litigation" (*Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)), it is nonetheless an appropriate mechanism to employ to expeditiously dispose of a lawsuit when the moving party's right to a judgment in its favor is clear and free from doubt (*Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001)). A trial court's ruling on a motion for summary judgment is subject to *de novo* review. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009).

*Laches* is an equitable doctrine that precludes a litigant from asserting a claim when the litigant's unreasonable delay in raising the claim has prejudiced the opposing party. *In re Sharena H.*, 366 Ill. App. 3d 405, 413 (2006). The doctrine of *laches* "is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party." *Tully v. State*, 143 Ill. 2d 425, 432 (1991). To prevail on a *laches* affirmative defense, the defendant must satisfy two elements and prove that: (1) the plaintiff failed to exercise due diligence in bringing its suit; and (2) the plaintiff's delay served to prejudice the defendant. *Lozman v. Putnam*, 379 Ill. App. 3d 807, 822 (2008); *Negron v. City of Chicago*, 376 Ill. App. 3d 242, 247 (2007). A mere lapse in time from the accrual of a cause of action to the filing of a lawsuit is insufficient to support a *laches* defense. *Negron*, 376 Ill. App. 3d at 247. Moreover, as a general rule, the doctrine of *laches* does not apply to governmental entities absent extraordinary circumstances. *In re Sharena H.*, 366 Ill. App. 3d at 413; *Schivarelli v. Chicago Transit*

*Authority*, 355 Ill. App. 3d 93, 103 (2005). This is because *laches* could impair the functioning of the government, which, in turn, would adversely affect the public. *In re Sharena H.*, 366 Ill. App. 3d at 413. The nonaction of governmental officials will not support a *laches* defense; rather, *laches* will only apply if the governmental officers initiated an affirmative act that induced the action of the respondent. *In re Sharena H.*, 366 Ill. App. 3d at 413; *City of Chicago v. Alessia*, 348 Ill. App. 3d 218, 229 (2004). A defendant's mere speculation that she would have asserted her rights differently will not support a *laches* defense. *Alessia*, 348 Ill. App. 3d at 229.

Here, the crux of Yballe's claim is that the State waited too long between the 2000 administrative decision and the filing of this enforcement action in 2005. Her *laches* defense is thus based entirely on the nonaction of the State. Yballe does not identify nor does she allege that the Attorney General or the Department took any affirmative act that resulted in her failing to seek recovery against PCC at an earlier date. Because the nonaction of governmental officials will not support a *laches* defense, we find Yballe's *laches* argument to be without merit. *In re Sharena H.*, 366 Ill. App. 3d at 413; *Alessia*, 348 Ill. App. 3d at 229. Moreover, we observe that her argument regarding the relationship between the Department's delay in bringing suit and PCC's financial situation is entirely speculative and will thus similarly not support a *laches* defense. See *Alessia*, 348 Ill. App. 3d at 229 (recognizing that speculation will not support a *laches* defense). We therefore find that the trial court did not err in granting the Attorney General's motion for summary judgment notwithstanding Yballe's *laches* defense.

Accordingly, for the reasons stated herein, we affirm the judgment of the trial court.

Affirmed.

GARCIA and LAMPKIN, JJ., concur.