WABASH COUNTY, ILLINOIS, Plaintiff-Appellant, v. ILLINOIS MUNICIPAL RETIREMENT FUND *et al.*, Defendants-Appellees.

Second District   No. 2—10—0025

Opinion filed February 28, 2011.

Lee T. Polk, of Law Offices of Barnes & Thornburg, of Chicago, and Cassandra A. Goldman, State's Attorney, of Mt. Carmel, for appellant.

William P. Hardy, of Hinshaw & Culbertson LLP, and Michael L. Wagner, of Hinshaw & Culbertson LLP, of Belleville, for appellee City of Mt. Carmel.

John T. Hundley, of Sharp Law Firm, P.C., of Mt. Vernon, for appellee Terry C. Kaid.

Michael B. Weinstein, of Illinois Municipal Retirement Fund, of Oak Brook, for other appellees.

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.

Justices McLaren and Hudson concurred in the judgment and opinion.

## OPINION

Plaintiff, Wabash County, appeals the trial court's order dismissing its complaint pursuant to section 2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619 (West 2008)). Plaintiff's lawsuit stemmed from a decision by defendant the Illinois Municipal Retirement Fund (the IMRF) to dismiss plaintiff's request for correction of records regarding a contribution charge of $540,990.79 for a pension for defendant Terry C. Kaid. Three issues are raised on appeal: (1) whether the trial court erred in dismissing plaintiff's complaint for a declaratory judgment that the IMRF exceeded its authority pursuant to the Illinois Pension Code (the Pension Code) (40 ILCS 5/1—101 *et seq.* (West 2008)); (2) whether the trial court erred in dismissing the complaint after concluding that plaintiff failed to sufficiently allege a claim for relief under the Administrative Review Law (the Review Law) (735 ILCS 5/3—101 *et seq.* (West 2008)); and (3), if plaintiff did sufficiently allege a claim under the Review Law, whether any deference should be accorded to the IMRF's decision. For the reasons set forth below, we affirm in part and reverse in part the trial court's judgment and remand the case to the IMRF for further proceedings.

## I. Background

The relevant facts are not in dispute. Plaintiff is a county existing under the laws of Illinois and is a participating municipality in the IMRF pension program. The IMRF is a pension fund that pays pensions to certain employees and their beneficiaries. The IMRF is administered by a board of trustees and a staff and is governed by the Pension Code. Among other duties, the IMRF charges participating employers, including plaintiff, for the costs associated with the pensions of employees covered by the program. Defendants Sharon U. Thompson, Ruth E. Faklis, Martha H. Rademacher, Max F. Bochmann, Gwen Henry, Marvin Shoop, Jr., William Stafford, and Michael D. Suppan are members of the IMRF board of trustees, and defendant Louis W. Kosiba is the executive director of the IMRF. Defendant City of Mt. Carmel is a municipality established pursuant to the Illinois Municipal Code (65 ILCS 5/1—1—1 *et seq.* (West 2008)) and is a participating municipality in the IMRF pension program. Defendant Kaid is a licensed attorney residing in Wabash County.

Kaid was an attorney in private practice from January 1981 through November 1992 and, in this capacity, provided legal services to Mt. Carmel, which designated him "city attorney." During his years in the private practice of law, Kaid was not enrolled as a participant in the IMRF and did not receive pension benefits as an employee of Mt. Carmel. According to the record on appeal, Kaid was compensated for his legal services to Mt. Carmel as an independent contractor. From December 1, 1992, through November 30, 2004, Kaid served as State's Attorney for Wabash County. While serving as State's Attorney, Kaid earned 12 years of creditable service for IMRF pension purposes, but that service is not at issue in this appeal.

The current matter arose when the IMRF charged plaintiff $540,990.79 based on pension credits Kaid received for his legal services to Mt. Carmel from 1981 through 1992. In August 2002, the city clerk for Mt. Carmel submitted to the IMRF an omitted service credit verification to verify omitted creditable service toward Kaid's IMRF pension based on his service as city attorney. After initially concluding that Kaid did not qualify for creditable service for the years he served as city attorney, in December 2002 the IMRF granted Kaid creditable service status for those years. Beginning in May 2003 and concluding in June 2004, Kaid made a series of payments to the IMRF to purchase his omitted service credit, pursuant to the IMRF's retroactive grant of creditable service status. As a result, in June 2004, Kaid had purchased 96 months of omitted service credit. Without the retroactive credit, Kaid was entitled to a pension equal to 40% of his pay for his 12 years of service as State's Attorney. With the retroac-

tive credit, however, Kaid became entitled to a pension equal to 80% of his pay for 20 years of service. In January 2005, Kaid applied for his pension, and the IMRF approved the pension of 80% of his pay for 20 years of service, which included the 8 years of omitted service credit. Kaid's pension began to be paid in March 2005.

On May 10, 2006, the IMRF sent plaintiff a letter that provided in pertinent part:

"The present value of benefits decreased from $1,100,734 in 2004 to $566,356 in 2005, a 94% decrease. The total assets decreased from $531,596 in 2004 to negative $687,473 in 2005. This decrease was due to the retirement of [Kaid], whose annuity decreased your assets by $1,191,593.55. Your unfunded liability increased from $569,138 in 2004 to $1,253,829 in 2005. This is the main reason for the increase in the employer rate."

The letter did not mention that Kaid had retroactively received eight years of omitted service credit for his service as city attorney for Mt. Carmel.

In July 2006, Mt. Carmel reversed its 2002 decision and informed Kaid that he was not entitled to the omitted service credit for the years he served as city attorney. Shortly thereafter, the Mt. Carmel city council passed a resolution providing that Kaid was ineligible for the omitted service credit. Subsequently, the IMRF requested Mt. Carmel to hold an evidentiary hearing regarding Kaid's employment status for his service as city attorney, the determination of which the board of trustees for the IMRF could adopt or reject.

On September 1, 2006, in light of the evidentiary hearing, Kaid filed a lawsuit against the IMRF and Mt. Carmel (the Kaid litigation), seeking a declaratory judgment regarding his pension. Kaid did not name plaintiff as a party to the litigation. During the lawsuit, Kosiba filed an affidavit averring that the IMRF did not investigate Kaid's status as an employee of Mt. Carmel or his application for the omitted service credit. The parties reached a settlement agreement in which Kaid agreed to pay Mt. Carmel $5,000 a year for 20 years or until his death if earlier, and Mt. Carmel and the IMRF agreed to drop with prejudice the administrative proceedings regarding Kaid's pension and grant Kaid pension credit for his service as city attorney.

On July 10, 2008, the IMRF sent plaintiff a letter stating that the contribution charge for Kaid's pension was $540,990.79. Plaintiff then exhausted its administrative remedies by filing with the IMRF a request for correction of records on October 6, 2008, asking that Kaid's pension credit for his service as city attorney and the $540,990.79 contribution charge be rescinded. Pursuant to the request, the IMRF asked the parties to submit briefs regarding whether plaintiff's chal-

lenge to Kaid's omitted service credit was timely and whether plaintiff had standing to challenge the contribution charge.

On July 1, 2009, after a hearing was conducted, the IMRF informed plaintiff that its request for correction of records was dismissed as untimely and barred by *laches*. In reaching its determination, the IMRF's "findings and conclusions" were that plaintiff was aware of the total charge attributable to Kaid's pension; the Kaid litigation was "extensively covered" by the local news media; two representatives of Mt. Carmel had advised a county board member that it would be in plaintiff's best interest if it joined the Kaid litigation; plaintiff's "unreasonable failure" to assert its rights in the Kaid litigation would prejudice Kaid and Mt. Carmel; and allowing plaintiff to "insist upon its rights" at this time, after failing to assert its rights in the Kaid litigation, would unreasonably hinder the resolution reached in that lawsuit. Having found plaintiff's request untimely and barred by *laches*, the IMRF did not decide whether plaintiff had standing to challenge the contribution charge for Kaid's pension.

On August 3, 2009, plaintiff filed a complaint in the trial court seeking, *inter alia*, a declaratory judgment that the IMRF's contribution charge of $540,990.79 violated the Pension Code. Count I alleged that the IMRF's administrative decision was void because it did not provide plaintiff an adequate opportunity to challenge the merits of the charge. Count II alleged that the charge was unauthorized under the Pension Code because the IMRF did not have authority to give Kaid retroactive omitted service credit for the years he served as city attorney. Count III alleged that the charge was void irrespective of Kaid's continued receipt of pension payments. Count IV alleged that the settlement between the IMRF, Mt. Carmel, and Kaid was void because it was unauthorized under the Pension Code. Count V sought equitable relief as a result of the "numerous procedural and substantive irregularities in the course of the IMRF's administration of Kaid's pension disputes." The IMRF, Mt. Carmel, and Kaid each filed a motion to dismiss pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2008)). The motions argued that plaintiff's complaint was both untimely and beyond the jurisdiction of the trial court because it sought a declaratory judgment instead of administrative review, which was required pursuant to section 7—220 of the Pension Code (40 ILCS 5/7—220 (West 2008)) and section 3—110 of the Review Law (735 ILCS 5/3—110 (West 2008)).

On December 8, 2009, the trial court dismissed plaintiff's complaint, concluding that plaintiff could not seek a declaratory judgment and that it did not properly seek relief pursuant to the Review Law. In reaching its determination, the trial court stated:

"[The complaint is] brought as a declaratory judgment action and the references to the [Review Law] are I think tangential at best, so I don't believe that it satisfies the requirement of the [Review Law]."

Plaintiff filed a timely notice of appeal.

## II. Discussion

### A. Declaratory Judgment

The first issue plaintiff raises on appeal is whether the trial court erred in dismissing its complaint seeking a declaratory judgment. Plaintiff asserts that it properly alleged that the IMRF violated the Pension Code and that, therefore, it could seek a declaratory judgment. Specifically, plaintiff argues that the IMRF's contribution charge violates the Pension Code because Kaid's service as city attorney did not qualify for IMRF pension credit. Thus, according to plaintiff, "there is no basis to conclude that Kaid's private lawyers [*sic*] services to Mt. Carmel could be a proper charge to [plaintiff]," and it was for the court to decide whether the IMRF exceeded its authority under the Pension Code.

We review *de novo* a trial court's dismissal of a complaint pursuant to section 2—619 of the Code, in which all well-pleaded facts are deemed true and the moving party admits the sufficiency of the complaint. *Winters v. Wangler*, 386 Ill. App. 3d 788, 793 (2008). Pursuant to the Pension Code, the purpose of the IMRF is to provide an efficient system for the payment of annuities and other benefits to officers and employees of municipalities. 40 ILCS 5/7—102 (West 2008). The Pension Code defines covered employees as "all persons who are employees" of a participating municipality. 40 ILCS 5/7—137(a)(1) (West 2008). The Pension Code further provides that it is the duty of IMRF's board to make administrative decisions regarding participation and coverage. 40 ILCS 5/7—200 (West 2008); see also *Billik v. Village of Brookfield*, 80 Ill. App. 3d 907, 909-10 (1980) (holding that a participating municipality has no authority to determine who is an eligible employee). In determining who is a covered employee, the Pension Code utilizes the common-law rules applicable to determining an employer-employee relationship, and it expressly excludes from coverage a person employed as an independent contractor by a participating municipality (40 ILCS 5/7—109 (West 2008)). The Pension Code mandates that a participating municipality make contributions as authorized by the IMRF. 40 ILCS 5/7—182 (West 2008).

In addition, pursuant to the Pension Code, final administrative decisions rendered by the IMRF are subject to the provisions of the Review Law. 40 ILCS 5/7—220 (West 2008). The Review Law was

designed to provide a single method of judicial review for decisions made by most administrative agencies and prohibits the use of preexisting methods to secure judicial review. *Stykel v. City of Freeport*, 318 Ill. App. 3d 839, 845 (2001). Thus, when an administrative agency is subject to it, the Review Law becomes the sole method of securing judicial review of that agency's decision, eliminating conflicting common-law and statutory remedies. *Stykel*, 318 Ill. App. 3d at 845 (citing *People ex rel. Goldfarb v. White*, 54 Ill. App. 2d 483, 487 (1964)). Nonetheless, a decision rendered by an administrative agency that lacks jurisdiction over the parties or the subject matter, or a decision that is beyond the statutory authority of the administrative agency, is void and can be collaterally attacked in any court, at any time. *Board of Education v. Board of Trustees of the Public Schools Teachers' Pension & Retirement Fund*, 395 Ill. App. 3d 735, 739 (2009). As our supreme court has stated, the term "jurisdiction" with respect to an administrative agency has three aspects: (1) personal jurisdiction, which is the agency's authority over the parties involved in the proceedings; (2) subject matter jurisdiction, which is the agency's power to hear and determine the general class of cases to which the particular case belongs; and (3) the scope of the agency's authority under a particular statute. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989). Our supreme court emphasized, however, that, while theoretically an agency acts without authority whenever it makes an erroneous decision, because the statutes do not give authority to make erroneous decisions, it is for the reviewing court to distinguish an erroneous and voidable decision from a decision that lacks statutory authority and is void. *Business & Professional People for the Public Interest*, 136 Ill. 2d at 244-45. An agency decision that is erroneous and voidable is not subject to a collateral attack, whereas an agency's decision made without statutory authority is void and subject to a collateral attack. *Board of Education*, 395 Ill. App. 3d at 740.

In the current matter, despite the manner in which plaintiff phrases its allegations, the complaint alleges that the IMRF made an erroneous decision. The essence of plaintiff's complaint is that the IMRF erred by granting Kaid pension credits for the years he served as city attorney while in private practice, charging plaintiff a contribution charge as a result of the credited years, and dismissing as untimely and barred by *laches* plaintiff's request for correction of records. However, as noted above, the Pension Code provides the IMRF with broad authority to make administrative decisions regarding participation and coverage of employees, and to authorize contributions from participating municipalities. See 40 ILCS 5/7—182, 7—200

(West 2008). Even assuming, as plaintiff argues, that the IMRF incorrectly dismissed plaintiff's request for correction of records, granted Kaid pension credits for which he was not eligible pursuant to the Pension Code, and charged plaintiff $540,990.79 as a result of those credits, its decision would be voidable as erroneous, not void for lack of jurisdiction. See *Board of Education*, 395 Ill. App. 3d at 740. In other words, plaintiff's allegation that the IMRF made an erroneous decision is distinct from an allegation that the IMRF acted beyond its statutorily mandated authority. See *Business & Professional People for the Public Interest*, 136 Ill. 2d at 245 ("We are confident *** that a reviewing court can make the appropriate distinction between an erroneous decision and one which lacks statutory authority."). Therefore, plaintiff cannot seek a declaratory judgment against the IMRF"s decision dismissing its request for correction of records, because doing so would constitute an impermissible independent attack on the IMRF"s administrative decision. See *Stykel*, 318 Ill. App. 3d at 846 (noting that once a final judgment has been rendered by an administrative agency, a trial court has no authority to entertain independent actions regarding the actions of the administrative agency).

## B. Administrative Review

The second issue plaintiff raises on appeal is whether the trial court erred in dismissing its complaint pursuant to the Review Law. Plaintiff argues that its complaint set forth the allegations necessary to sustain an action for administrative review by alleging that (1) a final administrative decision was rendered by the IMRF, which affected plaintiff's rights by requiring it to pay $540,990.76; (2) plaintiff is seeking judicial review of that decision because it violated the Pension Code; (3) plaintiff exhausted its administrative remedies; and (4) the IMRF will file the record of proceedings before its board of trustees.

The Review Law is part of the Code, which should be liberally construed so that controversies may be speedily and finally determined in accordance with the substantive rights of the parties. *Fontana v. Highwood Police Pension Board*, 296 Ill. App. 3d 899, 902 (1998). Illinois is a fact-pleading jurisdiction, requiring a plaintiff to set forth a legally recognized claim and plead facts in support of each element to sustain that claim. *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 434 (2007). Pursuant to the Review Law, a complaint for administrative review must allege that the plaintiff was a party of record to the agency's proceedings and that the plaintiff's rights, privileges, or duties were adversely affected by the agency's decision. *Mueller v. Board of Fire & Police Commissioners*, 267 Ill. App. 3d 726,

734 (1994). As noted above, we review *de novo* a trial court's dismissal of a complaint pursuant to section 2—619 of the Code. *Winters*, 386 Ill. App. 3d at 793.

Here, although plaintiff's complaint was not artfully drafted, it met the basic requirements to state a cause of action for administrative review of the IMRF's decision to dismiss as untimely and barred by *laches* plaintiff's request for correction of records. See *Mueller*, 267 Ill. App. 3d at 734. Paragraph 20 of the complaint alleged that the IMRF is subject to the Review Law. In addition, plaintiff alleged that it challenged the $540,990.79 contribution charge by filing a request for correction of records, which, in a letter dated July 1, 2009, the IMRF dismissed as untimely and barred by *laches*. That letter was attached to plaintiff's complaint and expressly advised plaintiff that the decision constituted a final administrative decision. Plaintiff's complaint further alleged that its rights were affected by the IMRF's decision because plaintiff was required to pay the contribution charge.

In reaching our determination, we recognize that plaintiff's complaint is titled as an action for a declaratory judgment. However, Illinois law is well settled that a pleading's substance and not its title determines its character. See *Savage v. Mui Pho*, 312 Ill. App. 3d 553, 559 (2000) ("[T]he character of a motion should be determined from its content, and a court is not bound by the title of a document given by a party."). Moreover, our determination that plaintiff sufficiently alleged an action for administrative review is consistent with the underlying policy that the Code should be liberally construed so that controversies may be determined in accordance with the substantive rights of the parties. See *Fontana*, 296 Ill. App. 3d at 902.

### C. The IMRF's Decision to Dismiss Plaintiff's Request for Correction of Records

Having determined that plaintiff sufficiently alleged a cause of action for administrative review, the final issue on appeal is what level of deference should be afforded to the IMRF's decision to dismiss plaintiff's request for correction of records as barred by *laches*. Plaintiff argues that whether its request for correction of records should be barred by *laches* is a question of law and subject to *de novo* review. Defendants counter that the Review Law mandates that the IMRF's decision should be afforded significant deference and be reversed only if that decision was clearly erroneous.

The standard of review applied to an administrative agency's decision depends on whether the issue presented is one of fact or law. *Sweilem v. Department of Revenue*, 372 Ill. App. 3d 475, 484 (2007). Purely factual findings are reviewed under a manifest-weight-of-the-

evidence standard and, therefore, are afforded great deference and are deemed *prima facie* true and correct. *Lindsey v. Board of Education*, 354 Ill. App. 3d 971, 978-79 (2004) (citing 735 ILCS 5/3—110 (West 2002)). Conversely, when review of an administrative agency's decision involves purely a question of law, we will review that decision *de novo*. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002). When the issue presented is a mixed question of law and fact, we review the agency's decision for clear error, which is a less deferential standard of review than that applied to pure questions of fact, and we will reverse when, based on the entire record, we are "left with a definite and firm conviction" that a mistake has been made. (Internal quotation marks omitted.) *Carpetland U.S.A.*, 201 Ill. 2d at 369. Because the determination of whether to apply *laches* is discretionary and "depends on the facts and circumstances of each case," a trial court's determination to apply *laches* is afforded significant deference and is reviewed for an abuse of discretion. *Marshall v. Metropolitan Water Reclamation District Retirement Fund*, 298 Ill. App. 3d 66, 74 (1998). Likewise, we will afford the IMRF's findings and conclusion to dismiss plaintiff's request for correction of records as barred by *laches* significant deference and will reverse that determination only if it was against the manifest weight of the evidence.

The doctrine of *laches* is an equitable doctrine that precludes a litigant from asserting a claim when an unreasonable delay in raising the claim prejudices the other party. *Madigan ex rel. Department of Healthcare & Family Services v. Yballe*, 397 Ill. App. 3d 481, 493 (2009). *Laches* is "grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his right to the detriment of the opposing party." *Tully v. State*, 143 Ill. 2d 425, 432 (1991). The defense of *laches* requires a showing that (1) a litigant has exhibited unreasonable delay in asserting a claim; and (2) the opposing party suffered prejudice as a result of the delay. *Monson v. County of Grundy*, 394 Ill. App. 3d 1091, 1094 (2009). *Laches* can be invoked to bar administrative complaints. *Christ Hospital & Medical Center v. Human Rights Comm'n*, 271 Ill. App. 3d 133, 137 (1995). Nonetheless, courts have expressed a "consistent reluctance" to impose *laches* on a government entity. *City of Chicago v. Alessia*, 348 Ill. App. 3d 218, 228-29 (2004). *Laches* will not be applied to government entities absent extraordinary circumstances because the doctrine could impair the functioning of government, which, in turn, would harm the public. *Yballe*, 397 Ill. App. 3d at 493-94. In addition, the nonaction of government officials will not support a *laches* defense. Rather, *laches* will apply only if the government officials initiated an

affirmative act that induced the opposing party to act, making it inequitable to permit the government entity to retract what the government officials have done. *Alessia*, 348 Ill. App. 3d at 229.

We previously addressed the doctrine of *laches* with respect to a government entity in *City of Marengo v. Pollack*, 335 Ill. App. 3d 981 (2002). In *Pollack*, the defendants purchased a parcel of land in 1986 and began operating a business that restored and sold wood pallets. *Pollack*, 335 Ill. App. 3d at 983. From 1986 until 1999, the defendants used between 12,000 and 16,000 square feet of outdoor space to store pallets, in violation of a local zoning ordinance that placed a limit on outdoor storage space. *Pollack*, 335 Ill. App. 3d at 983-84. In 1991 and 1997, the city inspected the defendants' property on two occasions before the defendants erected machine sheds, and the defendants also had ongoing contact with fire inspectors who told the defendants where pallets could be stored. However, between 1986 and 1999, the city never complained to the defendants about the storage area, nor did the city undertake any affirmative action to allow the excess outdoor storage space. *Pollack*, 335 Ill. App. 3d at 984. In 1999, the city learned that the defendants planned to construct a loading dock; it inspected the defendants' property and advised the defendants that their outdoor storage space was in violation of the local zoning ordinance. The city subsequently brought a lawsuit and the trial court rejected the defendants' *laches* defense, holding that the city's mere inaction and delay in enforcing its ordinance did not give rise to *laches*. *Pollack*, 335 Ill. App. 3d at 984-85.

On appeal, we upheld the trial court's decision to reject the defendants' *laches* defense. In reaching our determination, we emphasized that, although there was a long delay in the city asserting its right, "the evidence reveals at most only nonaction on the part of [the city]." *Pollack*, 335 Ill. App. 3d at 989. Specifically, we concluded that although the city's inspectors—who were on the property for other purposes—failed to notice the defendants' violation of the zoning ordinance and the city did not complain until 1999, "at no time did any agent of [the city] make any affirmative representations or give any assurances about the outdoor storage issue." *Pollack*, 335 Ill. App. 3d at 989. We further noted that there was no evidence of detrimental reliance. *Pollack*, 335 Ill. App. 3d at 989.

Our reasoning in *Pollack* is instructive in the current matter, and we conclude that the IMRF's dismissal of plaintiff's request for correction of records, pursuant to *laches*, was against the manifest weight of the evidence. Initially, we note that plaintiff's alleged delay in filing its request for correction of records, from when plaintiff first received a letter from the IMRF regarding Kaid's pension in May 2006 until

plaintiff exhausted its administrative remedies in October 2008, is significantly shorter than the delay in *Pollack*. See *Pollack*, 335 Ill. App. 3d at 989 (acknowledging that a 13-year delay in taking action was long). More important, the basic holding in *Pollack* is that *laches* should not be imposed when the evidence reveals only nonaction on the part of a government entity. *Pollack*, 335 Ill. App. 3d at 989. Here, based on the IMRF's findings and conclusions, there is no allegation or evidence that plaintiff engaged in any affirmative act or gave defendants any assurances regarding Kaid's pension that would justify imposing a *laches* defense based upon an affirmative act. There is also no reasonable basis to conclude that a detrimental reliance occurred. Specifically, the IMRF found that the Kaid litigation commenced on January 1, 2006, the court proceedings were "extensively covered" by the local media, and two people advised the chairman of the Wabash County board that it should join the Kaid litigation to split fees and that its pension costs would be substantially increased if Kaid received omitted service credits. The evidence that plaintiff failed to take part in the Kaid litigation amounts to, at most, nonaction. Therefore, even if we assume, *arguendo*, that plaintiff had notice of the Kaid litigation and that it would incur a substantial charge as a result of Kaid's pension, the record still does not support a finding of *laches*, because there is no evidence that plaintiff engaged in any type of affirmative act. See *Pollack*, 335 Ill. App. 3d at 989; see also *Yballe*, 397 Ill. App. 3d at 494 (concluding that a *laches* defense was not supported because the defendant presented no allegation or evidence that the government entity took any affirmative act). Further, defendants' argument that they would be "manifestly prejudiced" by plaintiff's alleged lack of diligence is also unconvincing. The basis of defendants' claim of prejudice is that, despite plaintiff's awareness of the Kaid litigation, it chose not to join in that lawsuit even though it knew its rights might be affected. However, this premise works both ways. If any of the defendants were concerned that plaintiff's responsibility to contribute to Kaid's pension would affect their ability to resolve the Kaid litigation, they could have joined plaintiff to that lawsuit (see 735 ILCS 5/2—405(a) (West 2008) ("Any person may be made a defendant who *** is alleged to have or claim an interest in the controversy ***.")), yet they did not do so. Thus, any alleged prejudice that might have resulted from plaintiff's failure to take part in the Kaid litigation can be equally attributed to defendants.

Moreover, the IMRF's findings and conclusions failed to specify why the current dispute regarding Kaid's pension constitutes an "extraordinary circumstance," as is necessary to justify the imposition of *laches* on a government agency. We emphasize that our determina-

tion that *laches* should not be imposed on plaintiff is consistent with the policy that the doctrine should not be imposed on a government entity absent extraordinary circumstances, because the public would be adversely affected. See *Yballe*, 397 Ill. App. 3d at 493-94. If plaintiff's request for correction of records were subject to *laches*, the taxpayers of Wabash County would be forced to pay a charge for pension credits to which Kaid is not entitled, merely as a result of plaintiff's inaction.

In sum, the IMRF's determination that plaintiff's request for correction of records was barred by *laches* was against the manifest weight of evidence because there was no evidence that plaintiff engaged in any affirmative act with respect to Kaid's pension credits. Rather, the only evidence relied on by the IMRF in reaching its decision that *laches* should be imposed was that plaintiff did not join in the Kaid litigation despite having notice of the lawsuit. As discussed above, that is an insufficient basis on which to impose *laches* on a government entity. Accordingly, we reverse the dismissal of plaintiff's request and remand this matter to the IMRF for further proceedings consistent with this opinion.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded to the IMRF for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded to the IMRF for further proceedings.